DeCARLO, Judge.
Conspiracy to commit theft of property in the first degree; six years.
Leavie Hodge of the Montgomery County Sheriff’s Department testified that, as part of his investigation of meat thefts in Montgomery, Alabama, he met with one Charlie Barnes, an inmate of the Elmore County Jail, in December 1979. Barnes agreed to assist Hodge as an informant.
Charlie Barnes stated that he had been disposing of stolen property by “running things through” the appellant since September or October of 1979. Barnes recalled that on January 10, 1980, he met with appellant and one Buster Dunn at appellant’s place of employment. At this meeting, appellant and Buster Dunn suggested that that the three of them steal a truckload of meat. It was agreed that appellant would locate a truckload in Montgomery and that he and Barnes would drive it to Montezuma, Georgia, to sell it to Dunn.
Eight days later, Barnes met with appellant at the latter’s apartment in Montgomery, and they further discussed the theft of the meat for sale to Dunn. At this meeting, Barnes had a tape recorder hidden in his boot. The recording and transcript of his conversation with appellant were admitted into evidence at trial.
*57 On January 23, 1980, Barnes called the appellant and told him that he (Barnes) had the meat and was ready to go to Georgia. Appellant stated that he had already talked to Buster Dunn about the transaction earlier that day. Appellant said that he would not be able to go to Georgia that night but he wanted Barnes to take Rex Wood in his place.
Doug Nelson of the Alabama Bureau of Investigation testified that he was working as an undercover agent with Barnes in delivering the meat. He stated that an official of the Winn-Dixie Corporation in Montgomery had agreed to lend the State a truckload of meat for its investigation. On January 23, 1980, Nelson picked up the meat, valued at approximately $18,000, from the Winn-Dixie warehouse, drove to the Mitylene exit on Interstate-85, and picked up Barnes. Nelson and Barnes then drove to Montezuma, Georgia, and delivered the meat to Buster Dunn. Dunn gave Barnes a $500. “downpayment” and all present were arrested by Georgia authorities participating in the investigation.
At the conclusion of the State’s case, appellant moved to exclude the evidence, arguing that the State had not established a prima facie case. Appellant contended specifically that the prosecution had failed to establish a “meeting of the minds” between appellant and Barnes in that Barnes was an informer who secretly intended to frustrate the conspiracy. Appellant also claimed that the State failed to prove an overt act in furtherance of the conspiracy. The motion was overruled and the appellant presented no evidence.
I
In our judgment, the State’s evidence was sufficient to establish a prima facie case of conspiracy, see Ala.Code § 13A — i-3 (1975), to commit theft of property in the first degree, see Ala.Code § 13A-8-3 (Supp. 1980).
Section 13A-4-3, supra, defines the offense of conspiracy, and limits the defenses thereto, in pertinent part, as follows:
“§ 13A-4-3. Criminal conspiracy generally.
“(a) A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more oí such persons does an overt act to effect an objective of the agreement.
“(b) If a person knows or should know that one with whom he agrees had in turn agreed or will agree with another to effect the same criminal objective, he shall be deemed to have agreed with such other person, whether or not he knows the other’s identity.
“(c) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, he gave a timely and adequate warning to law enforcement authorities or made a substantial effort to prevent the enforcement of the criminal conduct contemplated by the conspiracy. Renunciation by one conspirator, however, does not affect the liability of another conspirator who does not join in the abandonment of the conspiratorial objective. The burden of injecting the issue of renunciation is on the defendant, but this does not shift the burden of proof.
“(d) It is no defense to a prosecution for criminal conspiracy that:
“(1) The person, or persons, with whom defendant is alleged to have conspired has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or is immune from prosecution, or
“(2) The person, or persons, with whom defendant conspired could not be guilty of the conspiracy or the object crime because of lack of mental responsibility or culpability, or other legal incapacity or defense, or
“(3) The defendant belongs to a class of persons who by definition are legally incapable in an individual capacity of committing the offense that is the object of the conspiracy.
*58 “(e) A conspirator is not liable under this section if, had the criminal conduct contemplated by the conspiracy actually been performed, he would be immune from liability under the law defining the offense or as an accomplice under section 13A-2-24.” [Emphasis added]
Subsection (d)(2) of the statute provides the answer to appellant’s argument that he could not be guilty of conspiracy with Barnes because the latter was an informer without criminal intent. The statute specifically rejects the notion that it is a defense to a conspiracy charge that the person with whom the defendant agreed had no mental culpability. Ala.Code § 13A — 4-3, supra, also indicates that, although proof of an overt act is necessary, the accused himself need not do the act. It is sufficient if “any one or more of such persons [those with whom the defendant agreed] does an overt act to effect an objective of the agreement.” Ala.Code § 13A-4r-3(a) (1975). Without question, the State’s evidence proved the overt acts of Barnes’ driving the truckload of meat to Georgia, and Dunn’s giving partial payment on arrival.
Although not necessary to a prima facie case of conspiracy, the prosecution also introduced evidence that appellant did nothing to prevent the object of the agreement on January 23, 1980. Testimony from Barnes showed that, although appellant did not actually accompany him to Georgia to deliver the meat, appellant had discussed the delivery with Dunn that day and had suggested Rex Wood as a replacement passenger for Barnes.
In view of the foregoing facts, no serious argument can be made that appellant renounced the conspiracy within the terms of § 13A-4 — 3(c). That subsection indicates that an accused may escape liability only under the following conditions:
“[I]f, under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, he gave a timely and adequate warning to law enforcement authorities or made a substantial effort to prevent the enforcement of the criminal conduct contemplated by the conspiracy.”
The testimony of Investigator Doug Nelson that the truckload of meat was worth approximately $18,000. brings the object offense within the definition of theft of property in the first degree. See Ala.Code § 13A-8-3(a) (Supp. 1980).
We have searched the record and have found no error; the judgment of conviction by the Montgomery Circuit Court is therefore affirmed.
AFFIRMED.
All the Judges concur.