The appellant, Ricky Lee Davis, was convicted of the unlawful distribution of a controlled substance, in violation of §13A-12-211, Code of Alabama 1975. He was sentenced to six years in the state penitentiary.
The evidence tended to show that from February until the end of May 1988, Agent Claude Cosey of the ABC Board was working undercover in Covington County, Alabama. Micky Adams, an informant for the State of Alabama, was working with him. During the month of April, Adams got in touch with Kenneth Wayne Harrison, a fellow employee of the appellant, and requested that Harrison attempt to purchase drugs from the appellant. Harrison testified at trial that prior to that time he had never heard that the appellant was a possible source for drugs. Nevertheless, Harrison attempted to arrange a drug buy between Adams and the appellant; however, the appellant informed Harrison that such would not be possible. Harrison conveyed this message to Adams.
Adams continued to call Harrison during the following week, each time requesting that he go back to the appellant and attempt to purchase drugs. The appellant refused to get involved and Adams was so informed. Finally, after being called on a daily basis by Harrison, on behalf of Adams, the appellant reluctantly agreed to try to find the requested cocaine.
Upon learning that the appellant had acquired the requested drugs, Harrison traveled to the appellant's home in Laurel Hill, Florida, accompanied by Adams and Agent Cosey. At that time, the appellant was told by Agent Cosey that he did not want to complete the transaction in Laurel Hill, and he asked the appellant to accompany them in Adams's vehicle out of the city limits. Davis got into the vehicle, a pick-up truck, sandwiched between Adams, who was driving, and Agent Cosey, who was seated by the passenger's door.
The three began their journey out of the city limits of Laurel Hill, headed towards Alabama. It was undisputed at trial that on at least two occasions prior to entering Alabama, the appellant requested that they stop the vehicle. However, Adams continued on into Alabama, where the transaction was subsequently completed. *Page 793 
The dispositive issue for review is whether the evidence presented at trial was sufficient to negate the appellant's defense of entrapment. "Entrapment is the conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer."Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210,77 L.Ed. 413 (1932).
Alabama courts follow the so-called subjective approach when deciding whether there is evidence to support an entrapment defense. Trammell v. Disciplinary Bd. of the Ala. State Bar,431 So.2d 1168 (Ala. 1983); Jackson v. State, 384 So.2d 134
(Ala.Cr.App. 1979) writ quashed, 384 So.2d 140 (Ala. 1980);Tyson v. State, 361 So.2d 1182 (Ala.Cr.App. 1978).
 "A two-step test is used under the subjective approach: the first inquiry is whether or not the offense was induced by a government agent; and the second is whether or not the defendant was predisposed to commit the type of offense charged. A defendant is considered predisposed if he is 'ready and willing to commit the crimes such as are charged in the indictment, whenever opportunity was afforded.' If the accused is found to be predisposed, the defense of entrapment may not prevail. The predisposition test reflects an attempt to draw a line between 'a trap for the unwary innocent and the trap for the unwary criminal.' The emphasis under the subjective approach is clearly upon the defendant's propensity to commit the offense rather than on the officer's misconduct." (Footnotes omitted.)
W. LaFave, Substantive Criminal Law, Vol. 1, § 5.2(b) (1986).
It is the first inquiry of the two-step test under the subjective approach that is most troubling to this court.
 "The criminal defense of entrapment protects defendants against law enforcement conduct aimed at securing a prosecution by inducing the commission of a criminal offense. Because entrapment is ultimately concerned with government conduct and only incidentally with criminal culpability, it offers no defense to persons who succumb to the criminal blandishments of private individuals acting alone. It is a common method of law enforcement, however, for a government agent to encourage private persons who are unaware of the agent's identity to act as middlemen in seeking others who will assist them in illegal activity. Whether the entrapment defense is available to third parties induced to commit crime by an unsuspecting middleman is the subject of broad disagreement in the courts; the Supreme Court has never addressed the issue." (Footnotes omitted.)
95 Harv.L.Rev. 1122 (1982). Like the United States Supreme Court, neither this court nor our Alabama Supreme Court has ever addressed the issue of whether a third party may claim entrapment when he has been induced to commit crime by an unsuspecting middleman.
In Sorrells, supra, the United States Supreme Court articulated the "origin of intent test." This test permits invocation of the entrapment defense "when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells, supra, 287 U.S. at 442,53 S.Ct. at 212-13. The "origin of intent test" appears broad enough both in purpose and scope to allow an indirect entrapment defense. However, judicial treatment of the test seems to be in a state of disarray.
The prevailing view in the federal courts has been that a defendant may not defend based on indirect entrapment.Carbajal-Portillo v. United States, 396 F.2d 944 (9th Cir. 1968), exemplifies this view:
 "In Carbajal a government agent induced defendant Carbajal to transport heroin from Mexico to the United States. Without any further government provocation, Carbajal subsequently induced his codefendant Vega to drive him and the heroin across the Mexican border. They were both then arrested. The United States Court of Appeals for the Ninth *Page 794 
Circuit held that the government agent's inducement of Carbajal constituted entrapment as a matter of law, but affirmed the trial court's refusal to give an entrapment instruction to the jury with respect to Vega. The court reasoned that the government was not responsible for Carbajal's inducement of Vega despite the government agent's instigation of the overall scheme."
Note, 62 B.U.L.Rev. 929, 943 (1982). (Footnotes omitted.)
That case can be distinguished from the case at bar. Carbajal brought Vega into the criminal adventure on his own accord and without any inducement from the government agent. In the case at bar, the appellant was specifically targeted by ABC Agent Claude Cosey.
The United States Courts of Appeals often reach the opposite result based on a more liberal reading of the "origin of intent test." United States v. Klosterman, 248 F.2d 191 (3d Cir. 1957), is an example:
 "In United States v. Klosterman, Internal Revenue Service agent King conceived a plan to have Klosterman bribe him for the purpose of suspending a pending tax investigation. King posed as a corrupt IRS agent and persuaded fellow IRS agent Deeney, an unwitting intermediary, to solicit a bribe from Klosterman. With the aid of Stafford, Klosterman's insurance agent, Deeney succeeded in persuading Klosterman to offer King a bribe. The United States Court of Appeals for the Third Circuit found that Klosterman was not criminally predisposed; he was induced to offer the bribe by his codefendants, Deeney and Stafford. The court held that 'Deeney became King's agent for the purpose of entrapping Stafford,' and that Deeney and Stafford both became King's agents for the purpose of entrapping Klosterman.
 "Klosterman . . . held an unwitting intermediary to be a government agent when a particular third person was the target of the government's activities. Under this approach the unwitting intermediary's inducements are attributable to the government for purposes of the target defendant's entrapment defense. The result in [this case] and under this approach, is consistent with the aims of the origin of intent test. . . .
 ". . . [A] government agent conceived a plan to implicate a specific third party in a criminal act and took affirmative action to transfer the criminal plan to the defendant. Merely because the agent proposed the plan through an unwitting intermediary rather than by approaching the defendant directly does not alter the nature of the government's actions. Thus, [the Klosterman court] correctly found the origin of criminal intent in the government agent and hence allowed an entrapment defense."
Notes, 62 B.U.L.Rev. 929, 945-46. (Footnotes omitted.)
This court agrees with the holding in Klosterman and holds that a third party may claim entrapment when he has been induced to commit crime by an unsuspecting middleman. In the case at bar, Harrison, although unaware that he was helping with an undercover operation, was clearly acting as an agent of the ABC Board. Agent Cosey actually had two targets and manipulated Harrison to perfect a drug sale between Cosey and the appellant. Since the appellant committed the offense as a result of Harrison's action, the crime is "the creature of [Agent Cosey's] purpose." Sorrells, supra, 287 U.S. at 441,53 S.Ct. at 212. If the appellant was not predisposed to engage in the illicit sale of drugs, he should have the full benefit of the entrapment defense.
This brings us to the second inquiry of the two-step test under the subjective approach.
 "If the defendant has presented sufficient evidence of government inducement to prima facie establish entrapment, the second question of fact — whether the defendant was predisposed to commit the crime — arises. On this question, however, the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the offense. The government *Page 795 
can prove criminal predisposition in a variety of ways; it may present evidence that the defendant previously engaged in similar criminal conduct, participated in the development of a concerted plan to commit the crime, or responded to the inducement in a manner indicative of a willingness to commit the crime."
Notes, 62 B.U.L.Rev. 929, 940.
In addressing the proper allocation of the burden of proof in a case in which entrapment is claimed, this court, on numerous occasions, has quoted with approval from United States v.Dickens, 524 F.2d 441 (5th Cir. 1976), cert. denied, Glenos v.U.S., 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976):
 "The defendant must first come forward with evidence sufficient to raise a jury issue 'that the Government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it.' United States v. Mosley, 496 F.2d 1012, 1014 (5th Cir. 1974) citing Pierce v. United States, 414 F.2d 163, 168 (5th Cir. 1969). Once such issue is raised, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the charged offense. Id. See also United States v. Gomez-Rojas, 507 F.2d 1213, 1218 (5th Cir. 1975). By relying on entrapment as a defense, an accused exposes himself to a 'searching inquiry into his own conduct and predisposition . . .' Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932). To negative the defense, the government may introduce evidence to prove predisposition which is otherwise inadmissible. United States v. Moriarty, 497 F.2d 486, 488 (5th Cir. 1974); United States v. Simon, 488 F.2d 133 (5th Cir. 1973)."
Dickens, supra, 524 F.2d at 444. See also Burnette v. State,497 So.2d 838 (Ala.Cr.App. 1986); Jackson, supra; Tyson, supra.
In Chillous v. State, 441 So.2d 1055 (Ala.Cr.App. 1983), Judge Bowen discussed the meaning of "predisposition":
 "By 'predisposed' is meant that the accused is 'presently ready and willing to commit the crime. . . . [T]he predisposition which must be shown by the prosecution is a 'state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act for which the accused is charged.' [United States v.] Burkley, 591 F.2d [903] at 916 [D.C. Cir. 1978]. '[P]redisposition is, by definition, "the defendant's state of mind and inclinations before his initial exposure to government agents." ' United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir. 1983).
 "It is recognized that '[c]learly, one way of proving predisposition is to show that the defendant responded affirmatively to less than compelling inducement by the government agent.' Burkley, 591 F.2d at 916. 'Prompt acquiescence shows predisposition' to commit the crime. [United States v.] Myers, 692 F.2d [823] at 842 [2d Cir. 1982]."
Chillous, supra, 441 So.2d at 1057.
In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819,2 L.Ed.2d 848 (1958), the Court deemed the following factors probative in finding the evidence insufficient as a matter of law to support a finding that the defendant was predisposed to make a narcotics sale: there was no evidence that the defendant was in the business of selling drugs, government agents conducted a search of his apartment and found no drugs, and the defendant made no profit on the sale. A nine-year-old conviction for the sale of narcotics and a five-year-old conviction for possession of narcotics, although relevant, were held insufficient to establish that the defendant had a present readiness to deal in drugs. The government informer's repeated requests, necessary to overcome the defendant's reluctance, were further proof that the defendant was not a "ready and willing" participant in the scheme. Sherman, supra,356 U.S. at 375-76, 78 S.Ct. at 822-23.
In the case at bar, it is undisputed that the transaction complained of was not initiated by the appellant. Indeed, the appellant rebuffed the agent's advances on numerous occasions before finally giving in *Page 796 
so that they would cease "bugging" him. "It is the response of the target when the enterprise is initially proposed that can tell most about the individual's predisposition. In many entrapment cases, the accused exhibits reluctance, and the inducing agent or private individual applies pressure or persuasion, at the outset." 95 Harv.L.Rev. 1139 (1982). (Footnotes omitted.)
Furthermore, there was no evidence offered at trial to the effect that the appellant had ever been associated with the sale of drugs. It was also undisputed that the appellant possessed neither the drugs nor the knowledge of where to obtain drugs until pressed into action by the agent's repeated attempts to effectuate a drug transaction. Also, the appellant testified at trial that he received no profits from the transaction.
 "[L]aw enforcement tactics that seek to induce persons who are not predisposed to crime to engage in criminal activity are intolerable for two reasons. First, individuals have a strong interest in privacy: law-abiding people should be left alone by the government. Second, law enforcement resources are wasted when the subjects of investigation are not predisposed to commit crimes. Governmentally created opportunities to engage in an illegal activity should therefore be designed to detect and apprehend only those who are predisposed to commit a similar offense."
95 Harv.L.Rev. 1131 (1982). (Footnotes omitted.)
The evidence established that Agent Cosey, acting through Harrison, beguiled the appellant into committing a crime that he otherwise would not have committed. Accordingly, the law requires that the appellant's conviction be reversed and judgment rendered in his favor.
REVERSED AND JUDGMENT RENDERED.
All the Judges concur.