The appellant, William Henry Graham, was convicted of trafficking in cocaine, a violation of § 13A-12-231, Code of Alabama 1975, and was sentenced to 25 years' imprisonment. The evidence presented at trial tended to show that the appellant purchased seven ounces of cocaine from Agent Steve Mikels, an undercover drug enforcement agent, in what is commonly referred to as a "reverse buy."[1] The agent wore a body microphone and the entire transaction was recorded for presentation at trial. The appellant met with Agent Mikels, discussed the quantity of cocaine that he wanted to buy, and weighed the cocaine presented to him by the agent. An exchange was made whereby the appellant paid Agent Mikels $6,000 for 7 ounces of cocaine. The appellant also negotiated future purchases. Shortly after the conclusion of this transaction, the appellant was apprehended with *Page 164 
the 7 ounces of cocaine in his possession. Thereafter, in an attempt to protect his identity, the appellant was taken to a local motel room and was asked to cooperate with drug enforcement authorities. The appellant refused and was subsequently transported to jail. The appellant presents five issues on appeal.
 I
The appellant first contends that he was entrapped into committing the offense for which he was convicted. He maintains that he made the purchase only after being hounded by Clara Franklin, an old acquaintance who he now claims was working for drug enforcement authorities. He alleges that Ms. Franklin introduced him to the undercover agent, told him what to ask for when making the purchase, and requested that he inquire about future purchases as well. The appellant also asserts that Ms. Franklin provided a portion of the purchase money herself and that he merely "loaned" her the balance.
Entrapment is not available as a defense simply because a law enforcement officer provides the opportunity for the commission of a crime. Funari v. City of Decatur, 563 So.2d 54
(Ala.Cr.App. 1990). The defense of entrapment may be successfully raised only "when the criminal design originates with officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." Sorrells v. United States, 287 U.S. 435, 442,53 S.Ct. 210, 77 L.Ed. 413 (1932). See also Ex parte Adams,585 So.2d 161 (Ala. 1991).
In deciding whether there is evidence sufficient to support an entrapment defense, the Alabama courts utilize the "subjective approach." Davis v. State, 570 So.2d 791
(Ala.Cr.App. 1990). Under the subjective approach, a two-part test is employed. The first part is a determination of whether the offense was induced by a government agent; the second is a determination of the accused's predisposition to commit the type of offense charged. Before this type of defense will be successful, both parts must be met. W. LaFave, SubstantiveCriminal Law, Vol. 1, § 5.2(b) (1986). "The primary focus is on the predisposition of the accused rather than on the agent's actions." Adams, 585 So.2d at 163.
There is little doubt that a "reverse buy," such as the one involved in this case, involves some inducement by a government agency. Therefore, we will address the question of whether the appellant was predisposed to commit the offense. The rule is that an accused is predisposed to commit the crime for which he is charged when he is "ready and willing" to engage in such illicit activity. Davis, 570 So.2d at 793; Chillous v. State,441 So.2d 1055 (Ala.Cr.App. 1983).
 "It is recognized that '[c]learly, one way of proving predisposition is to show that the defendant responded affirmatively to less than compelling inducement by the government agent.' [United States v.] Burkley, 591 F.2d [903] at 916 [D.C. Cir. 1978]. 'Prompt acquiescence shows predisposition' to commit the crime. [United States v.] Myers, 692 F.2d [823] at 842 [2d Cir. 1982]."
Chillous, 441 So.2d at 1057.
In the present case, there was evidence to demonstrate that the appellant was indeed ready and willing to commit the offense. The appellant was associated with known drug dealers and had previously been seen selling cocaine. Furthermore, while alone with Agent Mikels, the appellant initiated the drug transaction, argued over the correct number of grams per ounce to compensate for the weight of the plastic bags, taste-tested a sample of the drugs that were for sale, and placed an order for another kilo of cocaine to be delivered in two days. The appellant's fluency in the language of the drug culture, coupled with the technical expertise he demonstrated in consummating the purchase, indicates that his actions were not those of a law-abiding citizen wrongfully entrapped in a drug sting but were instead the actions of one experienced in the drug culture. *Page 165 
To explain his actions and to demonstrate that he was entrapped, the appellant points to the actions of Clara Franklin as forcing him to participate in the purchase. This matter was before the jury. There was no testimony presented linking Ms. Franklin, or any of her alleged actions, to law enforcement officials. Furthermore, the appellant testified that the pressure exerted by Ms. Franklin consisted of her statement that she would "not be his friend anymore" if he did not go along with the purchase. The jury obviously found that this "inducement" did not deprive the appellant of his exercise of free will.
The appellant next contends that the conduct of law enforcement officials in peddling cocaine was so reprehensible as to violate his right to due process. He reasons that if the police had not furnished the cocaine and sold it to him, the offense would have never occurred. We reject this "but for" reasoning in entrapment cases. Accordingly, we find no error and reject the appellant's contention that he was entrapped by the drug enforcement authorities involved in this case.
 II
The appellant also contends that the State failed to establish a chain of custody for the cocaine seized at the time of his arrest sufficient to warrant the admittance of this cocaine into evidence.
At trial, the arresting officer, Investigator Wheeler, testified that at the time of the arrest, the appellant was informed of his Miranda[2] rights and was asked if he would consent to a search of his vehicle. The appellant agreed to the search and signed a written consent form. During the search, the officer located a white plastic "K-Mart" bag under the floormat in the appellant's vehicle. Inside the K-Mart bag, Investigator Wheeler found seven smaller plastic bags, each containing a white powder, which was later identified as cocaine. The investigator immediately sealed the cocaine into a manilla envelope and later locked this envelope in the evidence locker located in his office.
The appellant maintains on appeal that no evidence was presented establishing the whereabouts of the sealed envelope from the time of appellant's arrest to the time Investigator Wheeler locked it in his evidence locker. Specifically, the appellant now contends that there is an unaccounted-for period of time (three to five minutes) when Investigator Wheeler stopped at the motel room that the appellant was taken to for questioning.
Investigator Wheeler was vigorously cross-examined concerning the propriety of questioning the appellant in a motel room, but he was never questioned concerning the location of the sealed evidence envelope during this time. The appellant makes no allegation that the evidence had been tampered with or altered in any way. Holder v. State, 584 So.2d 872 (Ala.Cr.App. 1991).
The purpose of establishing a chain of custody is to demonstrate with "reasonable probability that the evidence has not been tampered with or altered." Bridges v. State,516 So.2d 895, 903 (Ala.Cr.App. 1987).
 " '[It is not necessary to prove to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from the object at the commencement of the chain. Slaughter v. State, 411 So.2d 819 (Ala.Crim.App. 1981), cert. denied, 411 So.2d 819 (Ala. 1982). See also, Mauldin [v. State, 402 So.2d 1106 (Ala.Cr.App. 1981)]; Sexton v. State, 346 So.2d 1177 (Ala.Crim.App.), cert. denied, 346 So.2d 1180 (Ala. 1977)."
Bridges, 516 So.2d at 903-04. The totality of circumstances test is applied to alleged deficiencies in a chain of custody.Moorman v. State, 574 So.2d 953 (Ala.Cr.App. 1990); Snowden v.State, 574 So.2d 960 (Ala.Cr.App. 1990). Under this test, the totality of the circumstances is considered to establish that there is a "reasonable probability" that the integrity of the evidence was maintained. Moorman, supra, at 957.
In the present case, Investigator Wheeler testified that after seizing the cocaine, he sealed the K-Mart bag containing the *Page 166 
seven bags of cocaine in a manilla envelope, initialled the seals, and placed evidence tape over the top of the envelope. After arriving at his office, he placed the envelope into his evidence locker, to which he alone has access. Several days later, Investigator Wheeler personally delivered the envelope with seals intact to Ed White, at the state toxicology laboratory, for analysis. Mr. White testified that he personally maintained control over the envelope from the time he received it from Investigator Wheeler until the trial. From this testimony, there is overwhelming evidence establishing a complete chain of custody. We find no links missing from the chain of custody in this case. Therefore, the trial court did not err in allowing the cocaine into evidence.
 III
The appellant further maintains that the trial court erred in denying his motion to require the State to disclose the identity of the confidential informant.
 "As a general rule, the accused is not entitled to know the name of the confidential informer unless the informer was a 'material witness', that is, 'an active participant in the illegal transaction which leads to the charges brought against the accused.' Self v. State, 420 So.2d 798, 800 (Ala. 1982), citing Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)."
Allen v. State, 494 So.2d 777, 781 (Ala.Cr.App. 1985).
In the case at hand, only the appellant and the police officer posing as a drug dealer were present during the transaction. The confidential informant merely introduced the appellant to the police officer involved. The informant was not a material witness nor an active participant in the illegal transaction. Therefore, the circuit court did not err in denying disclosure.
 IV
The appellant finally alleges that he was denied effective assistance of counsel. Specifically, the appellant claims that his trial counsel was ineffective because he failed to object to "prejudicial hearsay testimony." This issue was not presented to the trial court for decision. Therefore, it is not before us. Wood v. State, 416 So.2d 794 (Ala.Cr.App. 1982). However, even if this issue were before this court, we would summarily reject it.
The United States Supreme Court in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), set forth a two-prong test which must be satisfied before an accused can successfully prove ineffective assistance of counsel. The first prong of that test requires a showing that the counsel's performance fell below acceptable professional standards. The second prong of the test requires an accused to show that the counsel's performance directly prejudiced his case and injuriously affected the outcome.
The lawyer whose performance the appellant now attacks zealously and vigorously defended the appellant. No particular decision to object or not object, even if it is a bad decision, is in itself proof that counsel's performance fell below acceptable professional standards. Such a decision could have been a tactical decision, and we will not second-guess the tactics employed by defense counsel at trial. Johnson v. State,557 So.2d 1337 (Ala.Cr.App. 1990).
The appellant failed to meet the first prong of theStrickland test. Therefore, his allegation of ineffective assistance of counsel fails, and it is unnecessary for us to consider the second prong of this test.
For the foregoing reasons, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] A "reverse buy" is one where the undercover agent poses as a drug dealer who has a quantity of a controlled substance to sell. The "buy" is consummated when the agent actually makes a sale.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). *Page 167