On Applications for Rehearing

COBB, Judge.
This Court’s opinion of May 25, 2001, is withdrawn and the following is substituted therefor.
On July 8, 1999, as the result of an undercover operation conducted by the West Alabama Narcotics Squad (“WANS”), C.D.C. was indicted for unlawful distribution of marijuana and for first-degree possession of marijuana, violations of §§ 13A-12-211 and 13A-12-213(a)(l), Ala.Code 1975. On October 15, 1999, C.D.C. was denied admission to the Tuscaloosa County Drug Court (hereinafter “drug court”). On November 1, 1999, C.D.C. filed a motion seeking to overturn the denial and requesting that the trial court “issue an order directing the district attorney to proceed with the proper implementation of the Tuscaloosa County Enforced Community Sanctions Program by providing for the screening for eligibility of the defendant’s case for the Tuscaloosa County Drug .Court....” (C.R. 26.) On December 22, 1999, after a hearing, the trial court denied C.D.C.’s drug court motion. On February 3, 2000, the trial court granted C.D.C.’s application for .youthful offender treatment. On June 19, 2000, C.D.C. filed a “Motion to Dismiss for Lack of Jurisdiction.” On June 21, 2000, after a bench trial, the trial court adjudicated C.D.C. guilty of the unlawful distribution of marijuana and of second-degree possession of marijuana. The trial court sentenced C.D.C. to 18 months in prison for the distribution charge and to 6 months in jail for the possession charge, with , the sentences to run concurrently. The trial court also ordered C.D.C. to pay a $1,000 fine pursuant to § 13A-12-281, Ala.Code 1975, and directed that C.D.C.’s driver’s license be suspended. C.D.C. filed a motion for a new trial, which the trial court summarily denied. This appeal followed.
Upon adjudicating C.D.C. guilty, the trial court issued the following order:
“This youthful offender case was tried on June 8, 2000, ore tenus., The court finds the facts as follows. A cooperating individual, Tommy LaGrone, reported to a narcotic agent, Clint Davis, that he thought that he could make a buy of marijuana off a [B.H.], the father of the defendant. A phone call to [B.H.] revealed that [B.H.] would not sell any drugs, but that his son, the defendant, might. Clint Davis, arranged for the confidential informant to call the defendant on May 20, 1999, and request an ounce of marijuana. The phone call was made, and the defendant acknowledged he had an ounce of marijuana.. The *1024 price was stated to be $100.00, and that the confidential informant could come over and purchase the marijuana. The confidential informant then went to the defendant’s residence, paid the defendant $100.00 in marked bills, and the defendant gave the confidential informant the marijuana. The confidential informant then drove up the road to deliver the marijuana to the narcotics officer. The officers then went to the defendant’s home and mirandized him. He voluntarily gave a statement, in which he admitted selling the marijuana to the confidential informant. The defendant consented to a search of his person, and the marked money, and two more small bags containing marijuana were found.
“The defendant raised the issue of entrapment as a defense. The facts in the case of Garsed v. State, [50 Ala.App. 312, 278 So.2d 761 (1973),] are almost identical to this case. In that case, the evidence was insufficient to establish entrapment as a defense, and the court holds here that there is insufficient legal evidence to support defendant’s defense of entrapment in this case.
“The defendant also moved to dismiss the indictment on the grounds that the arrest was made by a city police officer out of the police jurisdiction, and that the city and county failed to comply with Code of Alabama 11-102-3 when the West Alabama Narcotics Squad was formed.
“As to the first ground, the defendant was arrested pursuant to an arrest warrant on May 24, 1999. Alabama Rules of Criminal Procedure Rule 3.3(a) provides in pertinent part: ‘(a) By whom. The arrest warrant shall be directed to and,may be executed by any law enforcement officer within the State of Alabama.’
“Rule 1.4(p) defines a law enforcement officer to be ‘... an officer, employee or agent of the State of Alabama or any political subdivision thereof who is required by law to ... (ii) make arrests for offenses ... ’
“Clearly, a municipal police officer is an officer of a political subdivision of the State of Alabama who is required by law to make arrests.
“Code of Alabama [§ 115-10-1, and the cases cited thereunder, make it clear that a city police officer can execute an arrest warrant in the county. Rule 3.3[, Ala. R.Crim. P.,] expands this right to execute a warrant anywhere in the State.
“The defendant’s argument that Code of Alabama [§ ]11 — 102—3 was not complied with is irrelevant, because it does not purport to limit the power of a police officer to arrest. Even if it did, the defendant has presented no evidence at the trial, outside of counsel’s assertions that the requirements of [§ ]11 — 102—3 were not met.
“The court therefore overrules the defendant’s motion to dismiss. After considering all the evidence, the court finds beyond a reasonable doubt that the defendant sold marijuana to Tommy La-Grone on May 20, 1999, and that the defendant was not entrapped into doing so. The defendant also possessed additional marijuana for his personal use only.”
(C.R. 155-57.)
C.D.C. presents four issues[1] on appeal. The first is an issue of first impression in Alabama.
*1025 i.
First, C.D.C. argues that he did not receive “sufficient and fair consideration of his eligibility for [drug court].” Before trial, C.D.C. filed a “Motion for Order of the Court,” requesting that the trial court order the district attorney to allow him into the drug court program. After a pretrial hearing, the trial court found that the district attorney’s decision to deny C.D.C. admission to drug court was not “arbitrary and capricious” and it denied C.D.C.’s motion. (R. 53.)
In his brief, C.D.C. has not offered any authority to support his claim that his denial of admission into the drug court program was “a blatant denial of due process.” (Appellant’s brief, p. 14.) See Rule 28(a)(5), Ala. R.App. P. Alabama courts have not addressed the due process to be accorded a defendant who has applied to be admitted to drug court.
We note that § 12-23-5, Ala. Code 1975, provides that those accused of certain drug offenses may request to enroll in a drug abuse program as an alternative to prosecution. The statute provides, “Admission to such treatment program and deferral of prosecution may be granted at the discretion of the district attorney. The Office of Prosecution Services shall establish guidelines, which shall be used by the prosecutor in evaluating the request for diversion from the criminal justice system into rehabilitation.” § 12-23-5, Ala. Code 1975 (emphasis added). We believe that, like the prosecutor’s decision to permit a defendant to complete a treatment program, the prosecutor’s decision to refer a defendant to drug court is solely within the prosecutor’s discretion. That decision is not subject to appellate review.[2]
II.
Second, C.D.C. argues that the trial court erroneously denied his motion for a judgment of acquittal based on the defense of entrapment. Specifically, C.D.C. argues that he was induced by the State through his father to sell marijuana to the confidential informant. We disagree.
“The action of the trial court in denying a motion for judgment of acquittal must be reviewed by determining whether there exists legal evidence before the jury, at the time the motion is made, from which the jury by fair inference could find the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978).”
Newsome v. State, 570 So.2d 703, 710 (Ala.Crim.App.1990).
“Alabama courts follow the so-called subjective approach when deciding whether there is evidence to support an entrapment defense. Trammell v. Disciplinary Bd. of the Ala. State Bar, 431 So.2d 1168 (Ala.1983); Jackson v. State, 384 So.2d 134 (Ala.Cr.App.1979), writ quashed, 384 So.2d 140 (Ala.1980); Tyson v. State, 361 So.2d 1182 (Ala.Cr.App.1978).
*1026 “ ‘A two-step test is used under the subjective approach: the first inquiry is whether or not the offense was induced by a government agent; and the second is whether or not the defendant was predisposed to commit the type of offense charged. A defendant is considered predisposed if he is “ready and willing to commit the crimes such as are charged in the indictment, whenever opportunity was afforded.” If the accused is found to be predisposed, the defense of entrapment may not prevail. The predisposition test reflects an attempt to draw a line between “a trap for the unwary innocent and the trap for the unwary criminal.” The emphasis under the subjective approach is clearly upon the defendant’s propensity to commit the offense rather than on the officer’s misconduct.’ (Footnotes omitted.)”
Davis v. State, 570 So.2d 791, 793 (Ala.Crim.App.1990). See also Garsed v. State, 50 Ala.App. 312, 278 So.2d 761 (1973).
The first step of the test is met here because, even though C.D.C. was originally approached by his father, who had no knowledge of the undercover investigation, “a third party may claim entrapment when he has been induced to commit crime by an unsuspecting middleman.” Davis, 570 So.2d at 794. Furthermore, C.D.C. ultimately dealt directly with an informant who, while working for state law enforcement, was clearly an agent of the state.
The evidence relevant to the second step, however, falls short of supporting an entrapment defense. There was no evidence that the father coerced, threatened, or otherwise exerted his parental authority over the 20-year-old son in order to force the son to sell marijuana to the informant. The record reveals that C.D.C.’s father was the original target of the investigation; that is, law enforcement did not contact the father with the idea of using the father’s parental authority to coerce the son. The father told the informant that he could not supply him with any marijuana, but volunteered that his son would be able to do so. The informant eventually contacted the son by telephone, and the son himself, rather than the father, told the informant to come to the mobile home to make the buy. Moreover, the record reveals that there is no evidence of any reluctance on the part of C.D.C. to participate in the transaction. Furthermore, the act of “cutting” the ounce of marijuana by two “dime bags,” which C.D.C. reserved for his personal use, indicates that he was far from the “unwary innocent” that the entrapment defense is designed to protect. Thus, the trial court correctly determined that C.D.C.’s claim of entrapment was without merit.
III.
Third, C.D.C. argues that “WANS eommit[ted] fraud upon the law through law enforcement’s actions as an illegal organization/illegal posse, such that the trial court should not grant jurisdiction over the case.” Specifically, C.D.C. claims that “WANS is not authorized to act as a multi-jurisdictional law enforcement entity because the contract between the five entities and/or jurisdictions was not enacted into law as is required by law.” (Appellant’s brief, p. 15 (citing § 11-102-3, Ala. Code 1975).) C.D.C. fails to cite any authority, and a search, reveals none, for the proposition that the trial court has no subject-matter jurisdiction over this case, even if WANS was not properly formed pursuant to § 11-102-3. Rule 28(a)(5), Ala. R.App. P.
Section 11-102-1, Ala.Code 1975, provides:
*1027 “Except as otherwise provided in this chapter or as otherwise prohibited by law, any county or incorporated municipality of the State of Alabama may enter into a written contract with any one or more counties or incorporated municipalities for the joint exercise of any power or service that state or local law authorizes each of the contracting entities to exercise individually. For purposes of this chapter, it is sufficient if each of the contracting entities has the authority to exercise or perform the power or service which is the subject of the contract regardless of the manner in which the power or service shall be exercised or performed, provided that at least one of the contracting parties has the authority to exercise the power or service in the manner agreed upon by the parties. The joint contract may provide for the power or service to be exercised by one or more entities on behalf of the others or jointly by the entities.”
C.D.C. contends that WANS did not have the power to investigate, to instigate the undercover operation, and to arrest him, but the cases he cites do not support this proposition. C.D.C. cites no authority for the proposition that, even if WANS’s contract was not enacted into law as required by § 11-102-3, its officers were without authority to execute an arrest warrant. The record reflects that those officers participating in the WANS program were not stripped of their authority from their originating departments when they signed on with WANS. Thus, C.D.C.’s claim that he was arrested by an illegal posse is without merit.
IV.
Fourth, C.D.C. argues that “WANS commitfted] fraud upon the law through law enforcement’s actions as an illegal organization/illegal posse, such that the trial court should suppress all the evidence that was obtained by the illegal WANS entity and dismiss the case.” Nowhere in his “Motion to Dismiss for Lack [of] Jurisdiction,” in his motion for a new trial, in his motion in arrest of judgment, during the pretrial hearing, nor during the trial itself, did C.D.C. ever present this specific argument for suppression of the evidence. Rather, C.D.C. objected to the trial court’s jurisdiction over the matter, as discussed above in Part III. “Specific grounds of objection waive all other grounds not specified at trial.” Smith v. State, 602 So.2d 470, 472 (Ala.Crim.App.1992). Thus, C.D.C. has not preserved this issue for appellate review.
For the reasons stated above, C.D.C.’s adjudications of guilt and his sentences are affirmed.
OPINION OF MAY 25, 2001, WITHDRAWN; OPINION SUBSTITUTED; APPLICATIONS FOR REHEARING OVERRULED; AFFIRMED.
McMILLAN, P.J., and BASCHAB and WISE, JJ., concur.
SHAW, J., concurs in the result.

. In his brief, C.D.C. lists six issues, but the last two merely summarize the same arguments made in the first four.

. Even if the decision were reviewable on appeal, we note that the district attorney stated that C.D.C. did not qualify for drug court because C.D.C. has been charged with a sale offense and that a sale offense automatically disqualified a defendant from drug court consideration. Moreover, the record contains a copy of the guidelines used by the district attorney to determine eligibility for the Tuscaloosa County Drug Court. Those guidelines classify "sale cases” as nonqualifying offenses. Even if the decision were subject to appellate review, and it is not, C.D.C. would not have been entitled to any relief on his claim.