COBB, Judge.
On July 13, 2001, Richard Patterson was convicted of criminal possession of explosives, a violation of § 13A-7-44, Ala.Code 1975, and of conspiracy to commit murder, a violation of § 13A-4-3 and § 13A-6-2, Ala.Code 1975. On August 24, 2001, the trial court sentenced him to serve 10 years in prison for the possession-of-explosives conviction and to life imprisonment for the conspiracy-to-commit-murder conviction. On September 10, 2001, Patterson filed a motion for a new trial, and the trial court denied his motion on October 1, 2001. Patterson gave timely notice of appeal.
In December 1999, David Lively, an acquaintance and former coworker of Patterson’s, contacted the Jefferson County SherifFs Department and informed it that Patterson had told him that he wanted to make a bomb to kill his ex-wife. The police began taping Lively’s conversations with Patterson. Lively met with Patterson a few more times, and wore a “wire” to the meetings. The police provided Lively with two military-style blasting caps and other items that could be used to make a bomb, and on December 21, 1999, Lively took those items to a meeting with Patterson. Patterson paid Lively for the items, and the police arrested him at the scene.
I.
First, Patterson argues that the trial court erroneously denied his motion for a judgment of acquittal because, he contends, the State did not prove certain material elements of each offense charged. Specifically, Patterson claims that the State failed to pi;ove (1) the existence of a conspiracy, and (2) that the items in question were explosives as defined by statute.[1] We disagree.
The Alabama Supreme Court addressed the appellate court’s role in reviewing the sufficiency of the evidence in criminal cases in Ex parte Woodall, 730 So.2d 652 (Ala.1998):
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985).’ Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d *864 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978) (emphasis original).”
730 So.2d at 658.
A.
Patterson contends that the trial court erroneously denied his motion for a judgment of acquittal on the conspiracy charge “because one cannot conspire with a police officer and/or agent who does not have the specific intent to commit the crime; to wit: the intent to kill.” (Patterson’s brief, p 3.) We disagree.
Section 13A-4-3, Ala.Code 1975, provides, in relevant part:
“(a) A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement.
[[Image here]]
“(d) It is no defense to a prosecution for criminal conspiracy that:
“(1) The person, or persons, with whom defendant is alleged to have conspired has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or is immune from prosecution, or
“(2) The person, or persons, with whom defendant conspired could not be guilty of the conspiracy or the object crime because of lack of mental responsibility or culpability or other legal incapacity or defense.”
We note that all of the cases relied on by Patterson in his brief are either based on federal statutes or the laws of other states, and thus do not apply to the statutory construction and interpretation of the Alabama statute. Also of importance is that the Alabama statute allows one person to be guilty of conspiracy even if the other person is not culpable.
In Zumbado v. State, 615 So.2d 1223 (Ala.Crim.App.1993), this Court stated:
“ ‘The elements of conspiracy are: first, the specific intent that a crime be performed; second, an agreement with another person to engage in or cause that crime to be performed; and third, the commission of an overt act by one of the conspirators in furtherance of the conspiracy.’ Greer v. State, 563 So.2d 39, 40 (Ala.Cr.App.1990).”
615 So.2d at 1242.
Based on § 13A-4-3(d)(l), Ala. Code 1975, it is not a defense to Patterson that Lively, acting as an informant for the police, was immune from prosecution. Similarly, § 13A-4-3(d)(2), Ala.Code 1975, provides that it is not a defense that Lively did not have the intent to actually kill Patterson’s ex-wife. In Ingle v. State, 405 So.2d 56 (Ala.Crim.App.1981), this Court held:
“Subsection (d)(2) of [§ 13A-4-3, Ala. Code 1975] provides the answer to appellant’s argument that he could not be guilty of conspiracy with [the informant] because the latter was an informer without criminal intent. The statute specifically rejects the notion that it is a defense to a conspiracy charge that the *865 person with whom the defendant agreed had no mental culpability.”
405 So.2d at 58.
The State presented evidence indicating that Patterson: (1) intended to kill his ex-wife; (2) entered into an agreement with Lively to obtain explosive devices suitable for lulling her; and (3) did in fact take delivery of explosives and other materials from Lively and pay Lively for those items.
Thus, based on the legal principles set forth above, the State presented evidence, if believed by the jury, legally sufficient for the jury to find Patterson guilty of conspiracy. The trial court did not err in denying Patterson’s motion for a judgment of acquittal on the charge of conspiracy to commit murder.
B.
Patterson argues that the trial court erroneously denied his motion for a judgment of acquittal on the charge of criminal possession of explosives on the grounds that the State failed to prove that the items he possessed were explosives. Specifically, Patterson contends that the blasting caps and timer were merely detonators, not explosives. We disagree.
Section 13A-7-40(2), Ala.Code 1975, defines explosives as follows:
“Any chemical compound or mechanical mixture that is commonly used or intended for the purpose of producing an explosion and which contains any oxidizing and combustive units or other ingredients in such proportions, quantities or packing that an ignition by fire, by friction, by concussion, by detonator or by chemical action of any part of the compound or mixture may cause a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects or of destroying life or limb.”
The evidence presented at trial, viewed in a light most favorable to the prosecution, showed that two military blasting caps and a timing device with conducting wire were among the items seized from Patterson. After the items were photographed as evidence, the caps were taken to the police firing range and detonated. The commanding officer of the bomb squad testified that the blasting caps were detonated in a metal can to demonstrate the metal-fragmentation effect that resulted from the detonation. A battery was placed in the timer, the timer was attached to one of the caps, the timer was set, the cap was placed in a metal can, and the cap detonated when the timer ran down. The bottom of the metal can was blown off by the explosion. The same process was repeated with the second cap. Both explosions were videotaped; the videotape was played for the jury.
In Farris v. State, 432 So.2d 538, 540 (Ala.Crim.App.1983), Farris “was observed holding a two liter plastic soft drink bottle in one hand and a cigarette lighter in the other hand. The bottle contained gasoline. A paper towel ‘rolled up’ and saturated with gasoline (‘that was used for a wick’) was ‘stuffed down into’ the top of the bottle.” This Court held that “[t]he plastic container filled with gasoline and provided with a paper towel wick was an ‘explosive’ within the meaning of [§ 13A-7-40(2), Ala. Code 1975].” Id. Patterson argues that the blasting caps are analogous to the paper towel wick in Farris, not to the gasoline-filled container, and therefore would not, alone, constitute an explosive under the statute. We do not agree with Patterson’s comparison.
Without more, a gasoline-soaked paper towel does not cause the type of explosion described in § 13A-7-40(2), Ala.Code 1975. The mere igniting of a paper towel is not likely to produce the “destructive *866 effects on contiguous objects or of destroying life or limb” as defined in the statute. However, the evidence here tended to show that the blasting caps themselves were explosives as defined by statute. The police ignited the blasting caps in metal cans. The resulting damage to the metal cans, coupled with the testimony of the commanding officer of the bomb squad, demonstrated the type of explosion and destructive effects contemplated by the statute. Therefore, a more accurate comparison would be to compare the timer to the paper towel wick, and the blasting cap to the plastic container filled with gasoline. In other words, the blasting caps, like the gasoline-filled container in Farris, swpra, were explosive devices within the definition of the statute.
Based on a review of the record, the State presented sufficient evidence that the blasting caps were explosives. The trial court did not err in denying Patterson’s motion for a judgment of acquittal on the charge of criminal possession of explosives.
II.
Next, Patterson claims that the trial court erred by denying his motions for a mistrial.[2] We disagree.
“A motion for a mistrial is a drastic remedy that should be used only to prevent manifest injustice. The ruling of the trial court on the motion will not be reversed unless there is a clear showing of abuse of discretion.” Smith v. State, 745 So.2d 284, 292-93 (Ala.Crim.App.1998) (citations omitted). “When an accused contends that a prosecutor has made improper comments, the comments at issue must be viewed in the context of the entire opening statement.” Proctor v. City of Prattville, 830 So.2d 38, 42 (Ala.Crim.App.2001) (citing Frazier v. State, 758 So.2d 577, 602 (Ala.Crim.App.1999)). See also Mason v. State, 768 So.2d 981, 991 (Ala.Crim.App.1998)(prosecutor’s comment “cannot be viewed in isolation, but rather should be viewed in the context in which it occurred”), aff'd, 768 So.2d 1008 (Ala.2000).
A.
Patterson contends that the trial judge erroneously denied his motion for a mistrial based on the prosecutor’s reference to the bombing of the Sixteenth Street Baptist Church in Birmingham during voir dire.[3] We disagree.
During voir dire, the prosecutor referenced the Sixteenth Street Baptist Church bombings.[4] Following voir dire and before the jury was struck, the trial court heard motions by Patterson and the State. During the motion hearing, the following exchange occurred:
“The Court: There was a side-bar that we had off the record that I said I would give you a chance to get your objection on record. So go ahead.
“[Defense Counsel]: Your Honor, I’m going to move for a mistrial, Judge. The prosecution brought up the most infamous case in this town, the 16th Street bombing case. Not only did they bring it up, they said the facts are similar, which was totally improper. This jury is tainted, Judge. They’re already now thinking this is the 16th Street bombing case all over again, and we all *867 well know that that defendant was found guilty. So I don’t think we can go forward now with this jury.
“The Court: Well, I’m going to overrule you. When we had our little sidebar, I told [the Prosecutor] not to go any further in it. She didn’t. I don’t think that the jury has been tainted by the remarks or the questions or the context of the questions that she asked. So I’ll overrule that.
“[Defense Attorney]: I’ll respect that, Your Honor, with an exception.”
(R. 16-17.)
The trial court instructed the prosecutor to refrain from the line of questioning, and she did not refer to the matter after that point. Based on our review of the record, we find no abuse of discretion by the trial court in denying the motion for a mistrial. See Proctor v. City of Prattville, 830 So.2d at 42 (“we cannot say from our limited review of the record that the trial court abused its discretion in denying the motion for a mistrial”). Thus, Patterson is not entitled to any relief on this claim.
B.
Patterson also claims the trial judge erroneously denied his motion for a mistrial based on the prosecutor’s comment “If he wants to argue entrapment, he’s got to admit that his client is guilty.” (Patterson’s brief, p. 35; R. 329-30.) We disagree.
During cross-examination, Patterson questioned one of the police officers about the lack of fingerprints found on the purchase money and questioned whether Patterson had actually ever handled the money. The following exchange occurred:
“[Prosecutor]: Judge, I’m going to object. If he wants to argue entrapment, he’s got to admit that his client is guilty.
“The Court: Okay. Let’s just state your objection.
“[Defense counsel]: Your Honor, I don’t have to admit my client is guilty of anything, and I respectfully ask to approach, Judge.
“The Court: No. You two are not going to argue among yourselves. If you have an objection, state your grounds and objection.
“[Prosecutor]: Judge, I’m going to object, because it’s irrelevant if he wants to use an entrapment defense of whether there was fingerprints or anything. And that’s my objection.
“[Defense counsel]: That’s exactly what I’m getting to you [sic], Your Hon- or.
“The Court: Wait a second. I’m going to overrule your objection. Now ask your next question.
“[Defense counsel]: Your Honor, can I approach?
“The Court: Yes.
“(Side-bar conference, off the record.)
“The Court: Let’s just go back in my office.
“(In chambers conference.)
“The Court: Before we get started, [court reporter], can you go back and read me exactly what it was that [the prosecutor] said when he got up to speak just now?
“(Requested portion of record read.)
“The Court: Go ahead. State your objection.
“[Defense counsel]: Your Honor, for them to sit there — for him to have said in front of that jury that if I’m going to argue an entrapment defense that I’ve got to admit this man is guilty has tainted this jury. I’m asking for a mistrial right now. There is no way this case can continue with him having that planted in their head. There’s no way.
“[Prosecutor]: Judge, may I briefly respond? I know I got excited, and I apologize, but I’m talking strictly from a *868 legal standpoint. And the reason I said that is because there is extensive case-law which we plan to present to the Court that it says black letter law, in order to claim entrapment, the defendant must admit his guilt or the commission of the crime. It’s just like a self-defense argument. They must admit I’m the one who shot him and yeah, he’s dead, but I had a reason. It’s the exact same thing in entrapment. That’s the black letter law that I plan to present to this court.
“Amd that’s what it says, quote, unquote, the defendant must admit — in order to claim the defense of entrapment, he must admit guilt of the commission of the offense. And now he’s misleading the jury saying he didn’t do this. But he can’t have it both ways to sit and talk about bait and entrapment, and all of a sudden come in here and say well, there’s no fingerprints, he never gave him the money. That’s misleading the jury, and that’s why I made that objection.
“But that’s what the caselaw says. It’s not me. That’s a legal argument of what the caselaw says. And my objection was him continuously misleading this jury. And that was the reason I said that. Not to say that he has to say he’s guilty or anything in that sense.
“[Defense counsel]: Well, Your Hon- or, and I think you’ll agree with me that if he wanted to bring any caselaw here, that was to be presented to you and for you to issue the instruction of the law, and not for it to be done during a stated objection.
“Now, Judge, two elements of entrapment: Number one, he was set up. Number two, he was predisposed to do it. In other words, he had it had [sic] in his head to begin with. Those are the two elements of entrapment.
“Now, me asking him if Ricky Patterson’s fingerprints were anywhere on the money, if they are on the money, then Ricky Patterson has given this guy money. If they are not on there, who’s to say it’s not a deliberate setup by Mr. Lively, because nobody else’s fingerprints are on there but Mr. Lively’s. The point is this, that if the jury now is thinking that my client is automatically guilty, because I’m going to get up and argue an entrapment defense. This case can’t go on. I ask for a mistrial.
“The Court: Well, you have been arguing an entrapment defense from the very first.
“[Defense Counsel]: Absolutely, Judge.
“The Court: And that is inherent in an entrapment defense. You’re saying that your person did it and that he didn’t do it on his own, he was coerced or induced into doing it, and he had a predisposition for it is basically what you’re saying. I’m going to overrule you. But, Mr. [Prosecutor], don’t do that again.
“[Prosecutor]: Yes, Your Honor.
“The Court: Don’t get up and make statements like that.”
(R. 329-34.)
“The defense of entrapment is generally not available to a defendant who denies the act for which he was indicted.” Harris v. State, 794 So.2d 1214, 1217 (Ala.Crim.App.2000) (citing Lambeth v. State, 562 So.2d 575, 578 (Ala.1990)).
“ ‘ “Entrapment occurs when state officers or persons under their control incite, induce, lure, or instigate a person into committing a criminal offense, which that person would not have otherwise committed, and had no intention of committing.” ’ Wright v. State, 494 So.2d 936, 938 (Ala.Cr.App.1986) (quoting Geckles v. State, 440 So.2d 1189, 1191 (Ala.Cr.App.1983))....
“ ‘ “Such defense is not available, however, where the officer or other person *869 acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by the one who had the criminal intent.” ’ Wright v. State, 494 So.2d 936, 939 (Ala.Cr.App.1986) (quoting Jackson v. State, 384 So.2d 134, 139 (Ala.Cr.App.1979))”
Harris v. State, 794 So.2d at 1218.
In C.D.C. v. State, 821 So.2d 1021 (Ala.Crim.App.2001), this Court stated:
“ ‘ “A two-step test is used under the subjective approach: the first inquiry is whether or not the offense was induced by a government agent; and the second is whether or not the defendant was predisposed to commit the type of offense charged. A defendant is considered predisposed if he is ‘ready and willing to commit the crimes such as are charged in the indictment, whenever opportunity was afforded.’ If the accused is found to be predisposed, the defense of entrapment may not prevail. The predisposition test reflects an attempt to draw a line between ‘a trap for the unwary innocent and the trap for the unwary criminal.’ The emphasis under the subjective approach is clearly upon the defendant’s propensity to commit the offense rather than on the officer’s misconduct.” (Footnotes omitted.)’
“Davis v. State, 570 So.2d 791, 793 (Ala.Crim.App.1990). See also Garsed v. State, 50 Ala.App. 312, 278 So.2d 761 (Cr.1973).”
821 So.2d at 1026.
The prosecutor’s comment, though maybe not well-advised, was not improper. He explained his reasoning to the trial judge during the conference in the judge’s chambers. Taken in context, the comment does not appear to have been an attempt to inflame the jury. We find no abuse of discretion in the trial court’s denying Patterson’s motion for a mistrial. Patterson is not entitled to any relief because his claim is without merit.
III.
Finally, Patterson contends that the principles barring double jeopardy prevent him from being convicted for both conspiracy to commit murder and criminal possession of explosives arising from the same occurrence or transaction. We disagree.
The “same elements” test of Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), considers whether each offense “requires proof of an additional fact which the other does not.”
Conspiracy to commit murder requires an agreement with another to cause the unlawful death of another person and an overt act in furtherance of that agreement. Criminal possession of explosives requires that one possess, manufacture, buy, sell, or transport any explosive and intend that explosive be used in a crime.
Each of these crimes requires additional elements not present in the other. See e.g., Williams v. State, 830 So.2d 45 (Ala.Crim.App.2001). Criminal possession of explosives does not require an agreement with another. Nor does it require the intent to kill another person.
Therefore, because his claim is without merit, Patterson is not entitled to any relief.
For the aforementioned reasons, Patterson’s convictions and sentences are due to be affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.

. Patterson raised these claims as separate issues I and V in his brief. To avoid repetition, we have addressed them together in Part I of this opinion.

. Patterson raised this as separate issues II and III in his brief to this Court. To avoid repetition, we have addressed those issues together as Part II of this opinion.

. The reference was to the 1963 bombing of the Sixteenth Street Baptist Church in Birmingham during the civil rights struggle. Four young black girls were killed.

. Voir dire was not made a part of the record on appeal, so it is unclear exactly what the prosecutor said.