The appellant, Linda Wallace, was convicted of illegal possession of a controlled substance, cocaine, a violation of § 13A-12-212, Ala. Code 1975, and was sentenced to six years' imprisonment.
The state relied on a theory of constructive possession in this case. The appellant contends that the evidence presented at trial was insufficient to prove that she had had constructive possession of the controlled substance. Thus, she argues, it was error for the trial court to deny her motion for a judgment of acquittal.
The state's evidence tended to show that on August 4, 1995, at approximately 4:00 p.m., Nancy Jackson was in the kitchen of her home and heard a siren. She looked out her window and saw a black male placing something by a tree in a nearby field. The black male then got into a green sports utility vehicle and left. A female was driving the vehicle. Jackson and two children walked into the field where she discovered a gun and a large plastic bag, containing several smaller plastic bags of white and brown "stuff," which Jackson believed was cocaine and marijuana. At that time, a female, whom Jackson later identified as Jerri Tolbert, drove up in a maroon automobile. Jackson told Tolbert, "If you came around here to get [the gun and the drugs], you are not going to get [them] because somebody put [them] somewhere [they] — [they] don't belong." (R. 100-01.) Tolbert left in her automobile, but returned a few minutes later with Dorothy Bledsoe. Jackson, who had remained in the field, told Bledsoe that she was not going to get the items either. One of the children who had walked into the field *Page 536 
with Jackson had left and returned with a dog. When the dog began barking, Tolbert and Bledsoe drove away. Shortly thereafter, William McCurdy and one of his daughters[1] drove a car into the field where Jackson was standing. As she had done with Tolbert and Bledsoe, Jackson told McCurdy's daughter that she was not going to get the items either. At that point, Tolbert and Bledsoe returned to the field. William McCurdy got out of his car and began talking about the gun. Bledsoe then sprayed the barking dog with something, and McCurdy grabbed the gun and plastic bags from the ground and hurried them to his car. All four people — McCurdy and his daughter, Tolbert and Bledsoe — then drove away in their separate vehicles. Jackson noticed that McCurdy had dropped one of the small plastic bags. She telephoned the police and turned the bag over to the detectives. Testing determined that the contents were cocaine. Shortly after interviewing Jackson, the police obtained a warrant to search McCurdy's residence.
At approximately the same time that Jackson notified the police, the appellant's son and another individual were arrested when they drove up to McCurdy's residence in a green sports utility vehicle. Testimony indicated that the appellant is McCurdy's daughter and that she resides in the house with McCurdy and her son.
The search of the house began around 7:00 p.m. that same evening. The appellant and Jerri Tolbert were the only persons present in the residence when police arrived. During the search, the police discovered a plastic bag containing cocaine on the top of a six and one-half foot tall china cabinet in the living room. The police detective testified that he saw the bag as soon as he entered the room, that it was very noticeable, and that it was hanging over the edge of the cabinet. He also stated that it was so obvious that a "two-foot-two midget would have [seen it] that day at the position it was in." (R. 168.) The appellant and Tolbert were arrested for possession of cocaine.
The state also presented testimony from two police officers that Jackson had told them that the appellant was the daughter with McCurdy in the field earlier that day. However, Jackson testified that she told the police only that McCurdy's "daughter" was with him and that she never said that the appellant was with him. In fact, she testified adamantly that McCurdy's other daughter, Gloria, was with him at the field. The appellant testified that she was at work until approximately 4:50 p.m. on that day and that, therefore, she could not have been at the field around 4:00 p.m. At the close of the state's evidence, the appellant made a motion for a judgment of acquittal, which the trial court denied.
Possession, whether actual or constructive, has the following three attributes: (1) "[A]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control." Radke v. State,52 Ala. App. 397, 398, 293 So.2d 312, 313 (1973), aff'd. 292 Ala. 290, 293 So.2d 314 (1974). "Constructive possession may be determined by weighing facts tending to support a defendant's necessary control over the substances against facts which demonstrate a lack of dominion and control." Crane v. State,401 So.2d 148, 149 (Ala.Cr.App.), cert. denied, 401 So.2d 151
(Ala. 1981).
When the state relies on constructive possession, the state must also adduce some facts or circumstances from which the jury could find beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substance. Ex parteStory, 435 So.2d 1365 (Ala. 1983). Additionally, "knowledge by the accused of the presence of the controlled substance is an essential element and prerequisite to conviction for the offense of illegal possession of a controlled substance under the Alabama Controlled Substances Act." Temple v. State,366 So.2d 740, 741 (Ala.Cr.App. 1978). Such knowledge may be, and usually is, established by circumstantial evidence. Temple, 366 So.2d at 741. *Page 537 
When an accused has exclusive possession of the premises where contraband is discovered, a logical inference arises that the accused had knowledge of the presence of the contraband.Korreckt v. State, 507 So.2d 558, 565 (Ala.Cr.App. 1986). However, when an accused "does not have the exclusive possession of the premises where a controlled substance is found, some other corroborating circumstance must exist before he can be convicted of illegal possession." Temple, 366 So.2d at 743.
We find that the following evidence sufficiently supported an inference for the jury's consideration that the appellant knew the controlled substance was in her house:
(a) There was testimony that, if believed, would have connected the appellant with the events that took place at the field around 4:00 p.m. that day (at the very least, this evidence showed that Jerri Tolbert, who was seen by Jackson in the field a few hours earlier, was in the house with the appellant when the search was conducted);
(b) When the search was conducted, the appellant was home, and she was the only person who lived in the house who was at home;
(c) The cocaine was found in the living room, a "neutral" part of the house; and
(d) The cocaine was found on top of a china cabinet in plain view.
Where the evidence raises a question of fact for the jury, and such evidence, if believed, is sufficient to sustain the conviction, the overruling of a motion for a judgment of acquittal is not error. McHellen v. State, 351 So.2d 689
(Ala.Cr.App. 1977).
The judgment in this case is due to be affirmed.
AFFIRMED.
All Judges concur.
[1] McCurdy has more than one daughter. As discussed later, the identity of the daughter in the car with him was hotly disputed at trial.