814 So.2d 840 (2001)
Ex parte Keith Alan PERRY.
(Re Keith Alan Perry v. State of Alabama).
1000290.
Supreme Court of Alabama.
May 11, 2001.
*841 James M. Kendrick, Birmingham, for petitioner.
Bill Pryor, atty. gen., and Jack W. Willis, asst. atty. gen., for respondent.
WOODALL, Justice.
Keith Alan Perry was convicted of trafficking in cocaine, a violation of § 13A-12-231, Ala.Code 1975. He was sentenced to life imprisonment without the possibility of parole. The Court of Criminal Appeals, on September 22, 2000, affirmed the judgment of the trial court in an unpublished memorandum. Perry v. State (No. CR-98-2033), 814 So.2d 1011 (Ala.Crim.App. 2000) (table). Perry petitioned this Court for certiorari review, which we granted, limited to whether the trial court erred in denying his motion to suppress evidence seized as the result of an allegedly unlawful search of his residence.
Perry argues that the affidavit supporting the search warrant authorizing the search of his residence did not establish a sufficient nexus between the items sought to be seized and his residence. The affidavit stated, in pertinent part:
"I, Officer B.C. Bemis being duly sworn, state the following:
"1. That I am a Police Officer with Birmingham Police Department Narcotics Unit. The testimony contained within this affidavit is based on my personal knowledge and the knowledge conveyed to me by members of the Drug Enforcement Administration.
". . . .
"Further on October 27, 1997, Officer Bemis made an undercover buy of cocaine where Keith Perry delivered the cocaine to a neutral location not his residence. On October 31, 1997, Officer Bemis made an undercover buy of cocaine from Keith Perry where Keith Perry delivered the cocaine to a neutral location not his residence. On November 4, 1997, Officer Bemis made an undercover buy of cocaine from Keith Perry where Keith Perry delivered the cocaine to a neutral location not his residence.
"Officer Bemis knows from his experience and training that persons engaged in the sale of illegal drugs will often make the buyers meet them at a neutral location in order to divert suspicious [sic] from their residence and/or `stash house,' where they store the illegal drug.
"Independent investigation reveals that 109-10th Avenue North, Birmingham, Alabama, is the residence of Keith Perry.

*842 "Based on the above information, I have probable cause to believe and do believe that those items listed in Attachment I, are presently being stored at 109-10th Avenue North, Birmingham, Jefferson County, Alabama which is the residence of Keith Perry and that said items are being stored in violation of the Drug Crimes Amendments Act of 1987, Code of Alabama."
(Emphasis added.)
The Court of Criminal Appeals, relying on Gord v. State, 475 So.2d 900 (Ala.Cr. App.1985), held:
"Although the affidavit does not specifically state the method of investigation used to determine the address of the appellant's residence, a commonsense reading of the affidavit indicates that it was done under the supervision of Officer Bemis and the Birmingham Police Department. Additionally, while the affidavit does not state that drugs or any drug-related activity had been observed by the police in or around the appellant's residence, Officer Bemis states that, based on his experience, the fact that the appellant, within three weeks prior to his arrest, had sold cocaine to Officer Bemis on three different occasions at neutral locations, indicated that the appellant was likely storing a supply of drugs at this residence. `[T]he nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation.' Gord v. State, 475 So.2d 900, 905 (Ala.Cr.App.1985)."
However, the facts in Gord v. State are distinguishable from the facts in the present case. The affidavit in support of the warrant in Gord stated:
"Within the past twenty-four hours said informant arranged to purchase a quantity of cocaine from Ronnie Gord. Officers of the Huntsville Police Department set up a surveillance at the residence of Ronnie Gord and observed said Ronnie Gord leave his residence and go directly to meet the informant without making any stops. Ronnie Gord met said informant and purchased a quantity of cocaine.... Ronnie Gord was observed to leave his residence at 12285 North Parkway, Huntsville, Madison County, Alabama and drive south on the Parkway. Said Ronnie Gord was stopped by members of the Huntsville Police Dept. shortly after he left his residence and before he stopped at any other location. Based on the information provided by the confidential reliable informant Ronnie Gord's person and vehicle was searched. Officers seized a quantity of white powder believed to be cocaine and several hypodermic syringes containing a clear liquid and a yellow liquid. Based on the information provided ... I have reason to believe and do believe that illegal drugs are being concealed in the residence of said Ronnie Gord."
Id. at 904. The affidavit in Gord cited two separate occasions on which officers observed Gord leave his residence, saw him make no stops, and then found him in the possession of drugs. In the present case, the affidavit does not state that officers followed Perry from his residence to a drug sale. The affidavit does not state that Perry came from or went to his residence directly before or directly after any of the drug sales. Nor does the affidavit state that Perry was ever seen at the residence. In fact, the affidavit does not state how the officers came to know that the address was Perry's residence. Furthermore, Officer Bemis indicates that individuals engaged in the sale of illegal drugs may keep those illegal drugs at their residence or a "stash house," thereby identifying two possible locations in which officers *843 might find illegal drugs, without providing any cause to search one location over the other.
"It is true that the nexus between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation," but "there still must be a `substantial basis' to conclude that the instrumentalities of the crime will be discovered on the searched premises." United States v. Lockett, 674 F.2d 843, 846 (11th Cir.1982). In Lockett, the Eleventh Circuit stated that "[i]n United States v. Flanagan, 423 F.2d 745 (5th Cir.1970), the court noted that knowledge of a defendant's possession of stolen goods does not, without more, make reasonable a search of the defendant's residence." Id. Consequently, a defendant's possession of illegal drugs does not, without more, make reasonable a search of the defendant's residence.
The affidavit in this case does not present facts from which the judge might make an independent determination of probable cause, but offers instead nothing more than conclusory statements by Officer Bemis that sufficient probable cause exists to search Perry's residence. "`Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.'" Crittenden v. State, 476 So.2d 632, 633 (Ala.1985) (quoting Illinois v. Gates, 462 U.S. 213, 239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
An affidavit may "be validated if it is supplemented with additional facts which the magistrate considered before determining that probable cause was present.... Without such additional information, the affidavit and arrest warrant cannot be given any effect...." Crittenden, 476 So.2d at 634. In this case, the affidavit alone was insufficient to support a valid warrant, and there is no indication in the record that the district court was privy to any additional information before issuing the warrant.
The trial court erred when it denied Perry's motion to suppress evidence (cocaine) seized as the result of the search of his residence. Therefore, we reverse the judgment of the Court of Criminal Appeals and remand this cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, SEE, LYONS, JOHNSTONE, and STUART, JJ., concur.
HARWOOD, J., concurs specially.
BROWN, J., dissents.
HARWOOD, Justice (concurring specially).
I concur with the main opinion. I write, however, to explain certain considerations that lead me to that decision. First, the affidavit of Officer Bemis references three "undercover buys" of cocaine from Perry by Bemis on October 27, October 31, and November 4, 1997. It does not reference the fourth controlled buy by Bemis from Perry on November 5, 1997, wherein Perry again sold Bemis a quantity of cocaine, and was arrested at that point. Including in the affidavit information relating to this fourth sale would certainly have "shored up" the inference the State asks us to draw from the affidavitthat there was probable cause to believe Perry was obtaining the cocaine from his residence. A more important omission from the affidavit, however, is the omission of an item of information the State nonetheless proffers at page 10 of its brief: "In each case [of the controlled drug buys made from Perry], the drug sale was made within a short *844 time from the call of the undercover agent requesting the drugs." That information is simply not included within the affidavit. Also, the affidavit contains no information as to whether the calls of the undercover agent were made to Perry at a telephone number registered for the residence. If such information had been included in the affidavit, then the facts of this case would have been close enough to the facts of Gord v. State, 475 So.2d 900 (Ala.Crim. App.1985), to persuade me to vote to uphold the search. Of course, it may well have been that Perry received his telephone calls on "a mobile" phone, in which event his location at the time he received a call from the undercover agent would not have been indicated. We do not have before us telephone records from which we might resolve these unknowns, and they are not resolved by the materials that are before us. Officer Bemis's statements do not fit within the observations made in United States v. Lockett, 674 F.2d 843 (11th Cir.1982), cited in Gord, 475 So.2d at 905, concerning the fact that controlled substances "are usually kept in a dealer's place of residence and under constant surveillance or supervision"; Officer Bemis stated in his affidavit that drug dealers use neutral locations to consummate the transactions, "in order to divert [suspicion] from their residence and/or `stash house,' where they store the illegal drug." (Emphasis supplied.) Nothing in the affidavit serves to discriminate between the possibility that Perry was retrieving drugs from a "stash house" and the possibility that he was retrieving them from his residence.
BROWN, Justice (dissenting).
I respectfully dissent. I agree with the Court of Criminal Appeals, which found in its unpublished memorandum that, although the affidavit at issue here was "not a model of clarity," the affidavit nevertheless set forth a sufficient "`nexus between the objects to be seized and the premises searched,'" quoting Gord v. State, 475 So.2d 900, 905 (Ala.Crim.App.1985). The affidavit showed probable cause to believe that Perry was likely storing a supply of drugs at his residence. Perry was "obviously a dealer" and "logic and common sense dictate" that the cocaine he was selling would be kept in his residence. See State v. Bernth, 196 Neb. 813, 246 N.W.2d 600, 602 (1976), cert. denied, 430 U.S. 948, 97 S.Ct. 1587, 51 L.Ed.2d 797 (1977) (quoted in Gord, 475 So.2d at 905).