[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 494 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 495 
 On Return to Remand and on Application for Rehearing
The State's application for rehearing on intervening remand is granted. See Bishop v. State, 608 So.2d 345 (Ala. 1992). This Court's opinion of February 28, 2003, is withdrawn and the following opinion is substituted therefor.[1]
David F. Straughn was convicted of two counts of unlawful possession of marijuana in the first degree, violations of § 13A-12-213(a)(2), Ala. Code 1975,[2] and of one count *Page 496 
of unlawful possession of drug paraphernalia, a violation of § 13A-12-260, Ala. Code 1975. He was sentenced to eight years' imprisonment for each of the possession-of-marijuana convictions and to one year's imprisonment for the possession-of-drug-paraphernalia conviction; the sentences were to run concurrently.
The evidence adduced at trial indicated the following. In April 2000, a member of a hunting club contacted Mark Odom and Jody Scott, who were, at that time, members of the Red Level Police Department, and informed them that he had discovered marijuana plants growing in the woods where he hunted. Investigator Odom went to the area identified by the informant and located a patch of approximately 18 marijuana plants. The plants were in the woods, at the end of a dead-end road. Investigator Odom then decided to set up a video surveillance of the site. Because the Red Level Police Department did not have the equipment necessary to conduct the video surveillance, Investigator Odom contacted the Andalusia Police Department and asked for assistance.
On April 18, 2000, Mike Bowlan, at that time a detective with the Andalusia Police Department, brought two motion-activated video cameras to the area and set them up; one camera was placed near the road leading to the woods where the marijuana plants were located, and the other camera was placed inside the patch of marijuana plants. Two days later, on April 20, 2000, the officers checked the cameras to see if any activity had been recorded. The road-side camera had recorded two white males in a blue Chevrolet pickup truck driving down the road on April 20, 2000, but the camera in the patch had not recorded anything. On May 3, 2000, the officers again checked the cameras. This time, the road-side camera had recorded the same blue Chevrolet pickup truck driving down the road and parking near the woods, and it recorded a man with long hair getting out of the truck and then walking into the woods; several minutes later, the camera recorded the same man walking back to the truck and removing a "turkey hunter's mask" from his head. The camera in the patch had recorded a man wearing a turkey hunter's mask and tall snakeskin boots watering or otherwise tending the marijuana plants. The camera in the patch indicated that the man was tending the marijuana plants at the same time that the road-side camera recorded the same man near the truck.[3] Officer Scott testified *Page 497 
that when he viewed the videotape of the activity and saw the man removing the turkey hunter's mask from his head, he recognized the man in the video as Straughn, whom he knew personally, and that he recognized the truck in the video as Straughn's because he had previously seen Straughn driving the truck and had seen it parked at Straughn's residence.
On May 4, 2000, Investigator Odom obtained a search warrant for Straughn's residence and property. That same day, he and other officers executed the warrant; they searched Straughn's mobile home, a blue Chevrolet pickup truck belonging to Straughn's wife, Betty, parked outside the home, a greenhouse in the backyard, and the property surrounding the mobile home. Straughn, his wife, and his stepson were present at the time of the search. During the search, the officers discovered, among other things, a wooden smoking device, a Coca-Cola soft-drink can fashioned into a smoking device, numerous firearms, two turkey hunter's masks, a five-gallon bucket similar to the bucket used by the man who had been videotaped tending the marijuana plants in the woods, rolling papers, several containers of Miracle-Gro brand plant food and other chemicals used to enhance plant growth, and several small marijuana plants and seedlings. When the officers executed the search, Straughn was wearing snakeskin boots identical to those the man who had been videotaped at the patch had been wearing; the officers also discovered a hemostat, a device often used to hold a marijuana cigarette, in the front pocket of Straughn's overalls.
Straughn was indicted for two counts of possession of marijuana in the first degree — one count was based on the marijuana patch found in the woods and one count was based on the numerous marijuana plants and seedlings found on his property during the search. He was also indicted for possession of drug paraphernalia based on the various smoking devices found in his mobile home, the hemostat found in his pocket, and the various plant chemicals found on his property. The jury found him guilty on all three counts.
 I.
Straughn first contends that the trial court erred in denying his motion to suppress the items seized as a result of the search of his residence and property because, he claims, the affidavit submitted in support of the search warrant contained a false statement and was insufficient to establish a nexus between the marijuana plants in the woods and the items sought to be seized at his residence.
The affidavit submitted by Investigator Odom in support of the search warrant states, in pertinent part:
 "My name is Mark Odom and I am an Investigator with the Red Level, Alabama Police Department. During the course of my duties as such, I had a patch of growing marijuana that had been discovered, under surveillance with two video cameras. While videoing this patch, the camera recording the patch recorded a white male, wearing a turkey hunters mask, enter the patch of growing marijuana; and begin to tend the crop of marijuana. I videotaped this event and had another video camera set up along the road where the man's pickup had been parked, and when he returned to his vehicle, it was able to record him removing his mask and I was able to identify the man as David F. Straughn. I observed from the tapes that the truck that he was traveling on was a Chevrolet pickup truck made between 1980 and 1982 and was dark blue in color with white spoke wheels and the hood of the truck was lighter colored *Page 498 
than the body of the truck. Myself and other police officers began a surveillance of the aforedescribed residence of David F. Straughn and have observed this same pickup truck parked at that residence.
 "Therefore I have reason to believe and do believe that the aforenamed David F. Straughn is concealing in the aforedescribed residence, out-buildings, and vehicle; marijuana and/or the evidence of and/or the implements, tools, and other objects of paraphernalia used in the cultivation of marijuana, which is in violation of the Drug Crimes Amendment Act of 1987."
(C. 113b-113c.)
As for Straughn's contention that the items seized as a result of the warrant should have been suppressed because of an allegedly false statement contained in the affidavit, Investigator Odom did testify at the suppression hearing that he had "never been" to Straughn's residence "prior to . . . getting the search warrant." (R. 31.) However, Straughn never argued to the trial court that there was a false statement in the affidavit that somehow invalidated the affidavit and rendered the search illegal, see Ex parte Parker, [Ms. 1010487, January 17, 2003]858 So.2d 941 (Ala. 2003); his only argument to the trial court regarding the sufficiency of the affidavit in support of the search warrant was that it did not establish a sufficient nexus between the marijuana patch and his residence. Therefore, this argument is not properly before this Court for review. See, e.g., C.D.C. v. State, 821 So.2d 1021
(Ala.Crim.App. 2001), and Pace v. State, 766 So.2d 201 (Ala.Crim.App. 1999).
Moreover, even if this argument were preserved for appellate review, we find no merit to it.[4] As noted above, Investigator Odom testified at the suppression hearing that "prior to getting the search warrant" he "had never been to the defendant's home." (R. 31.) However, he stated in the affidavit that "[m]yself and other police officers began a surveillance of the aforedescribed residence of David F. Straughn and have observed this same pickup truck parked at that residence." (C. 26.) Although Investigator Odom's two statements appear, on their face, to be contradictory, the language Investigator Odom used does not preclude the possibility that both statements are true. The surveillance to which Investigator Odom referred in his affidavit could have been conducted by other officers, with Investigator Odom acting only in a supervisory capacity and not present during the surveillance. Indeed, nothing in the record, including Investigator Odom's testimony, indicates that no surveillance of Straughn's residence was conducted by any police officer. Investigator Odom's testimony indicates only that he, personally, had never been to Straughn's residence before he obtained the search warrant; that testimony indicates only that Investigator Odom did not personally conduct the surveillance to which he referred in his affidavit. Thus, Investigator Odom's testimony at the suppression hearing that he had never been to Straughn's residence before he obtained the warrant and his statement in the affidavit that he "and other officers began" surveillance of Straughn's residence before he obtained the warrant are not necessarily inconsistent. Although the affidavit could have been better worded, based on the record before us, we are not persuaded by Straughn's argument that the information in the affidavit was, in fact, false. *Page 499 
As for Straughn's contention that there was not a sufficient nexus between the marijuana patch in the woods and his residence to justify the search of his home, we are inclined to agree. Straughn cites Ex partePerry, 814 So.2d 840 (Ala. 2001), to support his contention. In Ex partePerry, the affidavit submitted in support of the search warrant stated that the requesting officer had made three controlled purchases of cocaine from Perry and that, in each instance, Perry delivered the cocaine "`to a neutral location not his residence.'" 814 So.2d at 841. The affidavit also stated: "'[The requesting officer] knows from his experience and training that persons engaged in the sale of illegal drugs will often make the buyers meet them at a neutral location in order to divert suspicious [sic] from their residence and/or "stash house," where they store the illegal drug.'" Id. The Alabama Supreme Court held that the trial court had erred in denying Perry's motion to suppress because, the Court stated, "the affidavit alone was insufficient to support a valid warrant, and there is no indication in the record that the district court was privy to any additional information before issuing the warrant." Ex parte Perry, 814 So.2d at 843. In a special concurrence, Justice Harwood noted that "[n]othing in the affidavit serves to discriminate between the possibility that Perry was retrieving drugs from a `stash house' and the possibility that he was retrieving them from his residence." Ex parte Perry, 814 So.2d at 844 (Harwood, J., concurring specially).
Here, as in Ex parte Perry, the mere fact that officers observed Straughn tending the marijuana patch on a neutral site, i.e., one that was not a part of his residence, was simply insufficient to establish a nexus to search Straughn's residence. Nothing in the affidavit indicated that drugs or paraphernalia were being kept at Straughn's residence as opposed to some other location, and there is no indication in the record that the magistrate who issued the warrant was presented with any information or evidence other than the affidavit. "[A] defendant's possession of illegal drugs does not, without more, make reasonable a search of the defendant's residence." Ex parte Perry, 814 So.2d at 843. Compare Gord v. State, 475 So.2d 900 (Ala.Crim.App. 1985) (a sufficient nexus was established where the affidavit stated that on two occasions officers observed the appellant leave his residence and that, before the appellant made any stops, he was detained and found to be in possession of controlled substances). Therefore, we hold that, under the facts of this case, as in Ex parte Perry, the affidavit was insufficient to support a valid warrant.
However, our holding that the warrant was invalid is not the end of our analysis. The State argues that, even if there was no showing of probable cause to obtain the warrant, the evidence seized in this case was properly admitted under the good-faith exception to the exclusionary rule. We agree.[5] "The good faith exception provides that when officers acting in good faith, that is, in objectively reasonable reliance on a warrant issued by a neutral, detached magistrate, conduct a search and the warrant is found to be invalid, the evidence need not be excluded." Rivers v. State, 695 So.2d 260, 262 (Ala.Crim.App. 1997). *Page 500 
 "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.' [Stone v. Powell], 428 U.S. [465,] at 498 [(1976)] (Burger, C.J., concurring)."
United States v. Leon, 468 U.S. 897, 921 (1984).
In Leon, the United States Supreme Court recognized four circumstances in which the good-faith exception was inapplicable: (1) when the magistrate or judge relies on information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) when the magistrate wholly abandons his judicial role and fails to act in a neutral and detached manner; (3) when the warrant is based on an affidavit so lacking an indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume it to be valid.
In this case, none of those circumstances were present to negate the good-faith exception. As noted above, based on the record before us, we cannot say that the affidavit in support of the warrant contained false information, and nothing in the record indicates that the issuing magistrate failed to act in a neutral and detached manner. Finally, we cannot say that the warrant was so facially deficient or lacking an indicia of probable cause as to make it unreasonable for Investigator Odom to believe it was valid. In this case, Investigator Odom obtained the warrant to search Straughn's residence on May 4, 2000, almost a year before the Alabama Supreme Court decided Ex parte Perry. If Investigator Odom had submitted the affidavit after the Alabama Supreme Court had decided Ex parte Perry, the State's "good-faith" argument would have failed. See generally Ex parte Lemus, 802 So.2d 1073 (Ala. 2001) (anticipatory warrants were not authorized by law at the time that the warrant was issued and executed, and, therefore, the evidence seized was inadmissible); and Ex parte Turner, 792 So.2d 1141 (Ala. 2000). However, based on Gord v. State, 475 So.2d 900 (Ala.Crim.App. 1985), the law ineffect at the time Investigator Odom obtained the search warrant, it was reasonable for the issuing magistrate to determine that Investigator Odom's affidavit provided a sufficient nexus to search Straughn's residence, and it was, therefore, reasonable for Investigator Odom to believe that the warrant was valid. We recognize that there was a break in the surveillance between the time Straughn and the truck were recorded on the videotape and the time the truck was observed at Straughn's residence. While it is true that one might hide their drugs at a "stash house," it is less likely that someone who is growing marijuana would take the time to maintain a separate storage location for their plastic buckets and Miracle-Gro brand plant food. Because the warrant included the tools used to cultivate the marijuana, common sense and reason, coupled with the controlling caselaw at the time the affidavit was presented to the magistrate, reasonably lead to the conclusion that those tools would not be kept at a "stash house" but, rather, would likely be found at the defendant's residence.
Because the good-faith exception applies in this case, the evidence seized was properly admitted, despite the fact that the affidavit supporting the search warrant *Page 501 
was deficient. The trial court properly denied Straughn's motion to suppress.
 II.
Straughn also contends that the trial court erred in admitting into evidence the police surveillance videotape of the marijuana patch and of the road leading to the marijuana patch because, he says, the State failed to lay a proper predicate for the admission of the tape. Specifically, he argues that the State failed to meet the seven-prong standard for admission required by Voudrie v. State, 387 So.2d 248
(Ala.Crim.App. 1980). The State argues that Straughn failed to preserve this claim for our review.
After opening statements, outside the hearing of the jury, the trial court stated that it understood that there was "going to be some argument about the admissibility of the tape." (R. 72.) Straughn's trial counsel answered affirmatively and requested that the admissibility of the videotape be argued outside of the presence of the jury. The trial court then held a hearing outside the presence of the jury, during which the State called Commander Bowlan to testify regarding the videotape. Commander Bowlan testified about his experience and training in operating the equipment that he had used and about certain details concerning the equipment. He stated that, to the best of his knowledge, the equipment had operated properly; that the cameras had recorded on eight-millimeter tapes, which had been copied onto one videotape; and that Officer Scott had identified the appellant as the person on the tape. Commander Bowlan acknowledged that he had not synchronized the clocks on the two cameras when he set them up. During Commander Bowlan's testimony, the trial court instructed Commander Bowlan to view the videotape that the State was seeking to introduce into evidence to ascertain whether it was a true and accurate copy of the original eight-millimeter tapes. When Commander Bowlan finished viewing the videotape, he testified that it was a true and accurate copy of the eight-millimeter tapes that had recorded the marijuana patch and the road leading to the marijuana patch, and that the fact that the timers were not synchronized did not affect the reliability or accuracy of the equipment.
After Commander Bowlan's testimony, Straughn's trial counsel objected to the introduction of the videotape on the grounds that the State had failed to lay the proper predicate under Voudrie, supra, and that the original eight-millimeter tapes had not been produced during discovery. In response, the prosecutor argued that he had laid the proper predicate for admission of the videotape and that he had notified Straughn's counsel over a year before trial of the existence of the eight-millimeter tapes and had made those tapes available to Straughn's counsel, but that Straughn's counsel had never requested to see the tapes. At the conclusion of the hearing, the trial court ruled that the videotape was admissible.
Initially, we note that the State argues on appeal that Straughn failed to preserve this issue for review because, it says, he did not raise this issue in the trial court by objecting when the State introduced the videotape into evidence. However, as can be seen from the aforementioned exchange that occurred just after opening statements outside of the presence of the jury, Straughn clearly preserved this argument for our review. Although the State is correct that Straughn did not object when the State introduced the videotape into evidence or when the videotape was played for the jury, he did object before the State ever attempted to introduce the videotape into evidence, and the *Page 502 
trial court heard arguments and testimony on the issue during a hearing outside the presence of the jury. The trial court ruled that the videotape was admissible, and that ruling was clearly a final ruling on the admissibility of the videotape. Contrary to the State's argument, Straughn did challenge the admissibility of the videotape at trial; his objection was timely (before the videotape was even offered by the State); and he received an adverse ruling. Therefore, this issue is properly before this Court for review.
"Generally, videotapes are governed by the same rules of evidence as still photographs, and their admissibility is a matter addressed to the sound discretion of the trial court." Ivery v. State, 686 So.2d 495,517-18 (Ala.Crim.App. 1996). There are two different theories that are used to determine the admissibility of videotapes — the "silent-witness" theory and the "pictorial-communication" theory. Since none of the officers were present at the site while the cameras recorded Straughn's activities in the patch and on the road leading to the patch, the "silent-witness" theory is appropriate. "Under the `silent witness' theory, a witness must explain how the process or mechanism that created the item works and how the process or mechanism ensures reliability." Exparte Fuller, 620 So.2d 675, 678 (Ala. 1993).
In Ex parte Rieber, 663 So.2d 999 (Ala. 1995), the Alabama Supreme Court stated:
 "'The "silent witness" theory is that a photograph, etc., is admissible, even in the absence of an observing or sensing witness, because the process or mechanism by which the photograph, etc., is made ensures reliability and trustworthiness. In essence, the process or mechanism substitutes for the witness's senses, and because the process or mechanism is explained before the photograph, etc., is admitted, the trust placed in its truthfulness comes from the proposition that, had a witness been there, the witness would have sensed what the photograph, etc., records. Wigmore [on Evidence], . . . § 790 [(1970 Supp. 1991)], and [2 John W. Strong,] McCormick [on Evidence], . . . § 214 [(1992)].
 "'A reasonable reading of Voudrie v. State, 387 So.2d 248 (Ala.Crim.App. 1980), cert. denied, 387 So.2d 256 (Ala. 1980); Carraway v. State, 583 So.2d 993 (Ala.Crim.App. 1991), cert. denied, 583 So.2d 997 (Ala. 1991); Molina v. State, 533 So.2d 701 (Ala.Crim.App. 1988), cert. denied, 489 U.S. 1086, 109 S.Ct. 1547, 103 L.Ed.2d 851 (1989),] and the more recent caselaw of the Court of Criminal Appeals leads us to conclude that the Court of Criminal Appeals is of the opinion that the "pictorial communication" and "silent witness" theories are mutually exclusive theories, rather than alternative theories. The proper foundation required for admission into evidence of a sound recording or other medium by which a scene or event is recorded (e.g., a photograph, motion picture, videotape, etc.) depends upon the particular circumstances. If there is no
qualified and competent witness who can testify that the sound recording or other medium accurately and reliably represents what he or she sensed at the time in question, then the "silent witness" foundation must be laid. Under the "silent witness" theory, a witness must explain how the process or mechanism that created the item works and how the process or mechanism ensures reliability. When the "silent witness" theory is used, the party seeking to have the sound recording or other medium admitted *Page 503 
into evidence must meet the seven-prong Voudrie test. Rewritten to have more general application, the Voudrie standard requires:
 "'(1) a showing that the device or process or mechanism that produced the item being offered as evidence was capable of recording what a witness would have seen or heard had a witness been present at the scene or event recorded,
 "'(2) a showing that the operator of the device or process or mechanism was competent,
 "'(3) establishment of the authenticity and correctness of the resulting recording, photograph, videotape, etc.[,]
 "'(4) a showing that no changes, additions, or deletions have been made[,]
 "'(5) a showing of the manner in which the recording, photograph, videotape, etc., was preserved[,]
"'(6) identification of the speakers, or persons pictured, and
 "'(7) for criminal cases only, a showing that any statement made in the recording, tape, etc., was voluntarily made without any kind of coercion or improper inducement.'"[6]
663 So.2d at 1008-09, quoting Ex parte Fuller, 620 So.2d at 678.
Commander Bowlan testified about the placement of the cameras, and about his training and experience with video cameras. He stated that the videotape was a true and accurate copy of the eight-millimeter tapes that had recorded the marijuana patch and the road leading to the patch; that the cameras had been operating properly; and that the fact that the timers had not been synchronized did not affect the reliability or accuracy of the equipment. Additionally, Officer Scott testified that he was able to identify Straughn from the videotape and that he recognized the truck shown on the videotape to be Straughn's. This testimony was sufficient to meet the requirements of the "silent-witness" theory. Therefore, the trial court did not err in admitting the videotape into evidence.
 III.
Finally, Straughn contends that the trial court erroneously denied his motions for a judgment of acquittal as to the possession-of-marijuana convictions, made at the close of the State's case-in-chief and at the close of all the evidence. He argues that the State failed to prove that he was in actual or constructive possession of the marijuana plants in the woods or of the marijuana plants found on his property because, he claims, the State failed to show that he had knowledge of any of the marijuana plants or that he had even been to the marijuana patch in the woods.
"'In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'"Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quotingFaircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd,471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational *Page 504 
finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App. 1997), quotingO'Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App. 1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston,358 So.2d 1040, 1042 (Ala. 1978). "'"[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine."'" Johnson v. State, 555 So.2d 818, 820 (Ala.Crim.App. 1989), quoting Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App. 1987), quoting in turn Byrd v. State, 24 Ala. App. 451, 451, 136 So. 431, 431 (1931).
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445(5th Cir. 1961).
 "'[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969). The procedure for appellate review of the sufficiency of the evidence has been aptly set out in Odom v. United States, 377 F.2d 853, 855 (5th Cir. 1967):
 "'Our obligation, therefore, is to examine the record to determine whether there is any theory of the evidence from which the jury might have excluded every hypothesis except guilty beyond a reasonable doubt. Rua v. United States, 5 Cir., 1963, 321 F.2d 140; Riggs v. United States, 5 Cir., 1960, 280 F.2d 949. In Judge Thornberry's words,
 "'". . . the standard utilized by this Court is not whether in our opinion the evidence and all reasonable inferences therefrom failed to exclude every hypothesis other than guilt, but rather whether there was evidence from which the jury might reasonably so conclude." Williamson v. United States, 5th Cir., 1966, 365 F.2d 12, 14. (Emphasis supplied).
 "'The sanctity of the jury function demands that this court never substitute its decision for that of the jury. Our obligation is [to] examine the welter of evidence to determine if there exists any reasonable theory from which the jury might have concluded that the defendant was guilty of the crime charged.' McGlamory, 441 F.2d at 135 and 136."
Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App. 1978). *Page 505 
"Possession, whether actual or constructive, has the following three attributes: (1) '[A]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.'" Wallace v. State, 690 So.2d 534, 536 (Ala.Crim.App. 1996), quoting Radke v. State, 52 Ala. App. 397, 398, 293 So.2d 312, 313
(1973), aff'd, 292 Ala. 290, 293 So.2d 314 (1974).
 "'When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [ 439 So.2d 718 (Ala.Cr.App.), rev'd on other grounds, 439 So.2d 723 (Ala. 1983)]; Yarbrough v. State, 405 So.2d 721 (Ala.Cr.App.), cert. denied, 405 So.2d 725 (Ala. 1981). This knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App. 1986); Temple v. State, [ 366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App. 1984); Temple v. State.'
 "Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App. 1987), rev'd on other grounds, 531 So.2d 697 (Ala. 1988).
". . . .
 "In Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978), this court provided a non-exclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant's property when the defendant is not in exclusive possession of the premises.
 "'While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
 "'"The kinds of circumstances which provide such connection are: (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
 "'"The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant's confrontation of the possibility that an *Page 506 
illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant's physical proximity to the contraband."
"'9 Land and Water L.Rev. 236, 248-49 (1974).'
"366 So.2d at 743."
Posey v. State, 736 So.2d 656, 658-59 (Ala.Crim.App. 1997).
In this case, there was sufficient evidence establishing that Straughn was in actual or constructive possession of both the marijuana plants in the woods and the marijuana plants and seedlings on his property. The evidence tended to show that in April 2000 Investigator Odom and Officer Scott received information that someone was growing marijuana on nearby hunting land. The police set up a video surveillance of the area, and Straughn's truck was twice recorded going down the dead-end road toward the marijuana patch — on one of those occasions, a man wearing a turkey hunter's mask was recorded tending the marijuana plants in the woods, and, thereafter, a man wearing similar clothing was recorded next to a truck identified as Straughn's removing the turkey hunter's mask; Officer Scott positively identified that man as Straughn. This evidence was sufficient to establish that Straughn was in actual possession of the marijuana found at the patch in the woods. In addition, Straughn's actual possession of the marijuana found at the patch in the woods, coupled with the drug paraphernalia found during the search of his residence, was sufficient to establish that Straughn had knowledge of the marijuana plants and seedlings on his own property.
Therefore, the trial court did not err in denying Straughn's motions for a judgment of acquittal.
 IV.
In the February 28, 2003, opinion that we today withdraw, this Court remanded this case for the trial court to vacate Straughn's conviction and sentence on the second count of possession of marijuana in the first degree. Citing Townsend v. State, 823 So.2d 717 (Ala.Crim.App. 2001);Lorance v. State, 770 So.2d 644 (Ala.Crim.App. 1999); and dicta in Girardv. State, [Ms. CR-01-0403, November 22, 2002] ___ So.2d ___ (Ala.Crim.App. 2002), we held:
 "Because the marijuana found on Straughn's property and the marijuana found at the neutral site were part of a single growing operation, Straughn's separate convictions for possession violated the principles of double jeopardy, and the trial court lacked jurisdiction to adjudge Straughn guilty of the second count of possession of marijuana in the first degree after he had already been adjudged guilty of the first count of possession of marijuana in the first degree, based on marijuana that was a part of the same operation. Therefore, this case must be remanded for the trial court to vacate Straughn's conviction and sentence for the second count of possession of marijuana in the first degree."
The trial court complied with our instructions and vacated Straughn's conviction and sentence on the second count of possession of marijuana in the first degree.
Upon further review, however, we now conclude that our original holding with respect to the conviction and sentence on the second count was inconsistent with existing caselaw, as exemplified by our decision inHarris v. State, 563 So.2d 9 (Ala.Crim.App. 1989). In Girard, supra, we discussed Harris as follows:
 "In Harris v. State, 563 So.2d 9 (Ala.Crim.App. 1989), the defendant was indicted for four counts of possession of *Page 507 
obscene material, violations of § 13A-12-192(B), Ala. Code 1975. Harris filed a '"motion to dismiss the indictment as being multiplicitous, or in the alternative, motion to compel an election by the State as to the count it intends to prosecute."' 563 So.2d at 9. The trial court denied the motion, and Harris subsequently pleaded guilty and received concurrent sentences of five years in prison. The Court of Criminal Appeals held that Harris had waived this argument by pleading guilty subsequent to the denial of his motion, but continued:
 "'Harris was charged in a four-count indictment with four separate violations of § 13A-12-192(b). Count one alleged the possession of a pornographic magazine. Counts two, three, and four each involved the possession of a different video cassette tape. Harris contends that he should have been convicted and sentenced for only one offense, because the magazine and cassette tapes were seized from his residence on the same occasion. We recognize that this argument may have considerable merit. See United States v. Meyer, 602 F. Supp. 1480, 1480-81 (S.D.Cal. 1985) (the appropriate union of prosecution for offenses of transportation of material involving sexual exploitation of children and importation of obscene material, arising from defendant's transporting several photographs in one binder, was one count for each offense, rather than one count for each photograph for each offense); Braunstein v. Frawley, 64 A.D.2d 772, 407 N.Y.S.2d 250, 253 (1978) ("[t]the promotion or possession of more than one item at the same time and on the same date constitutes one crime, and cannot be split into as many crimes as there are items"); State v. Smith, 323 N.C. 439, 373 S.E.2d 435, 438 (1988) ("[o]ther courts have similarly held that a single transaction involving obscene materials constitutes but one offense"). See also United States v. Kinsley, 518 F.2d 665 (8th Cir. 1975) (possession of firearms); Vogel v. State, 426 So.2d 863, 878-82
(Ala.Cr.App. 1980), affirmed, 426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983) (possession of drugs); Owens, Alabama's Minority Status: A Single Criminal Act Injuring Multiple Persons Constitutes Only a Single Offense, 16 Cum. L.Rev. 85, 105-06 (1985) (discussed in McKinney v. State, 511 So.2d 220 (Ala. 1987)). However, this issue has not been preserved for review.'
"563 So.2d at 10."
Girard, ___ So.2d at ___. See also McNish v. State,[Ms. CR-98-0654, February 4, 2000] ___ So.2d ___ (Ala.Crim.App. 2000), rev'd on other grounds, [Ms. 1991233, February 7, 2003] ___ So.2d ___ (Ala. 2003).
In the present case, Straughn did not argue in the trial court, and he does not argue on appeal, that his separate convictions for possession violated the principles of double jeopardy. This case is, therefore, controlled by Harris, and is distinguishable from Rolling v. State,673 So.2d 812 (Ala.Crim.App. 1995), and its progeny, which hold that certain double-jeopardy claims go to the jurisdiction of the trial court to render judgment or to impose a sentence. In Rolling, the appellant filed a Rule 32, Ala.R.Crim.P., petition for postconviction relief, challenging his convictions for felony murder and for the lesser-included offense of reckless manslaughter for the killing of a single victim, and his resulting concurrent sentences of life imprisonment for the felony-murder conviction and 10 years' imprisonment for the manslaughter conviction. The appellant *Page 508 
claimed in his petition that his two convictions for a single killing violated his right to be free from double jeopardy. Although the appellant's petition was filed long after the two-year limitations period in Rule 32.2(c) had expired, and although the appellant received concurrent sentences, the Rolling court held that the appellant's double-jeopardy challenge to his convictions was jurisdictional and, therefore, not subject to the procedural bars in Rule 32.2. The Court held that the trial court lacked jurisdiction to adjudge the appellant guilty of manslaughter and remanded the case for further proceedings. The Court stated:
 "Based on the above discussion, the trial court's judgment finding Rolling guilty of both crimes was error. We hold that, particularly pursuant to § 13A-1-8(b)(1), [Ala. Code 1975,] the court was without jurisdiction to adjudge Rolling guilty of manslaughter. Thus, this issue is exempted from the procedural bar presented by the expiration of the limitations period of Rule 32."
673 So.2d at 815.
Since the decision in Rolling, this Court has continued to hold that certain double-jeopardy claims implicate the jurisdiction of the trial court and, therefore, are not subject to waiver. See, e.g., Powell v.State, [Ms. CR-00-2435, September 27, 2002] ___ So.2d ___ (Ala.Crim.App. 2002); Deas v. State, [Ms. CR-01-0608, June 28, 2002] ___ So.2d ___ (Ala.Crim.App. 2002); Hale v. State, 831 So.2d 639 (Ala.Crim.App. 2001);Peterson v. State, [Ms. CR-00-1417, November 30, 2001] ___ So.2d ___ (Ala.Crim.App. 2001) (opinion on return to remand); Grayson v. State,824 So.2d 804 (Ala.Crim.App. 1999), aff'd, 824 So.2d 844 (Ala. 2001);Simmons v. State, 797 So.2d 1134 (Ala.Crim.App. 1999); Loggins v. State,771 So.2d 1070 (Ala.Crim.App. 1999), aff'd, 771 So.2d 1093 (Ala. 2000);Lorance v. State, 770 So.2d 644 (Ala.Crim.App. 1999);_Borden v. State,711 So.2d 498 (Ala.Crim.App. 1997), aff'd, 711 So.2d 506 (Ala. 1998); andDozier v. State, 706 So.2d 1287 (Ala.Crim.App. 1997). Like Rolling, most of those decisions involved simultaneous convictions for both a greater and a lesser-included offense.
However, caselaw from both this Court and the Alabama Supreme Court recognize that generally other double-jeopardy claims are singularly constitutional in nature and are, therefore, subject to waiver. See, e.g., Ex parte Ziglar, 669 So.2d 133 (Ala. 1995); Baker v. State,819 So.2d 87 (Ala.Crim.App. 2001); McNish v. State, supra; Stanley v.State, 723 So.2d 821 (Ala.Crim.App. 1998); Boyd v. State, 746 So.2d 364
(Ala.Crim.App. 1999); Burton v. State, 728 So.2d 1142 (Ala.Crim.App. 1997); State v. Richardson, 703 So.2d 421 (Ala.Crim.App. 1997); J.N.J.v. State, 690 So.2d 519 (Ala.Crim.App. 1996); McGaster v. State,689 So.2d 1001 (Ala.Crim.App. 1996); Owens v. State, 666 So.2d 32
(Ala.Crim.App. 1994); Sturdivant v. State, 643 So.2d 1013 (Ala.Crim.App. 1993); Powell v. State, 616 So.2d 370 (Ala.Crim.App. 1992); Kuk v.State, 602 So.2d 1213 (Ala.Crim.App. 1992); Kolmetz v. State, 600 So.2d 389
(Ala.Crim.App. 1991); Connolly v. State, 602 So.2d 443 (Ala.Crim.App. 1990), rev'd on other grounds, 602 So.2d 452 (Ala. 1992); Bolden v.State, 568 So.2d 841 (Ala.Crim.App. 1989).
As previously noted, the present case is materially indistinguishable from Harris, supra. Rolling is not implicated in this case. Furthermore, this case, like Harris, involves a multicount indictment alleging separate offenses. Unlike Lorance, supra, where the indictment on its face alleged in separate counts alternative methods of committing a single offense, the indictment here alleged separate offenses of possession of marijuana in the first degree. Although the evidence at trial established that the marijuana found *Page 509 
on Straughn's property and the marijuana found at the neutral site were part of a single growing operation and, thus, constituted a single act of possession under the rationale of Townsend, supra, Straughn did not argue that the evidence was insufficient to support separate convictions based on the jury's findings of separate acts of possession. Stated differently, Straughn's conviction under the second count is not supported by the evidence; however, other than as noted in part III of this opinion, the sufficiency of the evidence to support the conviction was never raised as an issue in the trial court. In Townsend, this Court stated:
 "[W]e conclude that Townsend was properly prosecuted and convicted for the crime of trafficking in cocaine. The trial court properly denied Townsend's motion for a judgment of acquittal. We also note, in conclusion, that the propriety of aggregating separate quantities of a controlled substance depends on the particular facts in question. Only an analysis of the facts will dictate whether a defendant's possession was sufficiently differentiated by time or location as to constitute separate units for prosecution or whether it constitutes a single offense."
823 So.2d at 724.
Based on the foregoing, we hold that Straughn's conviction and sentence for possession of drug paraphernalia and both of his convictions and sentences for possession of marijuana are due to be affirmed. This Court's February 28, 2003, opinion directing the trial court to vacate the conviction and sentence on the second count was in error. Therefore, we remand this case to the trial court for it to reinstate the conviction and sentence on the second count of possession of marijuana in the first degree. Due return shall be filed with this Court no later than 35 days from the date of this opinion.
APPLICATION GRANTED; OPINION DATED FEBRUARY 28, 2003, WITHDRAWN; OPINION SUBSTITUTED; REMANDED WITH DIRECTIONS.
McMILLAN, P.J., and COBB and WISE, JJ., concur. BASCHAB, J., concurs in the result.
[1] Straughn also filed an application for rehearing challenging this Court's affirmance of his conviction on the first count of possession. That application, which was prematurely filed, remains pending and may be amended within 14 days from the date of this Court's final decision, as specified in Rule 40, Ala.R.App.P.
[2] Count I of the indictment against Straughn alleged, in pertinent part, that on May 3, 2000, Straughn "did unlawfully possess marijuana, a controlled substance, for other than personal use and/or for personal use only after having been previously convicted of unlawful possession of marijuana for his personal use only." Count II of the indictment was identical to Count I, except that the offense was alleged to have occurred on May 4, 2000. The two counts tracked the language of § 13A-12-213(a)(1) and (2), Ala. Code 1975. However, the record indicates that the trial court instructed the jury only as to the alleged violation of § 13A-12-213(a)(2), and, therefore, the jury was precluded from considering the State's alternative theory under § 13A-12-213(a)(1):
 "Now, I will also tell you that with regard to the charge of possession of marijuana in the first degree that by statute this charge can be proved in two different ways. And in this case one defendant, defendant David Straughn, is charged under one theory or section of the statute, and the other defendant, Mrs. Betty Straughn, is charged under the other theory or section of the statute. And I will tell you what the particular elements are of each section as it relates to the charge against each defendant individually. So pay careful attention to that and you'll understand what I'm talking about.
 "Now, the defendant David Straughn is charged in Count One and Count Two with two separate charges of unlawful possession of marijuana in the first degree. Now, under the statute applicable to Mr. Straughn, I will tell you that a person commits the crime of unlawful possession of marijuana in the first degree if he possesses marijuana for his personal use only after he has already been previously convicted of either possession of marijuana in the second degree or unlawful possession of marijuana for his personal use only.
 "To convict under Count One or Count Two the State must prove beyond a reasonable doubt each of the following elements of unlawful possession of marijuana in the first degree. First, that the defendant David Straughn did possess marijuana for his personal use only after having been previously convicted of either unlawful possession of marijuana in the second degree or unlawful possession of marijuana for his personal use only. And two, that the defendant acted knowingly."
(R. 515-16.) Therefore, we assume that the jury found Straughn guilty of violating § 13A-12-213(a)(2).
[3] One camera showed that the man was tending to the crop at the same time that the other camera reflected that the man was returning to the truck and removing the mask. Commander Bowlan testified that the discrepancy was due to the fact that he had not synchronized the time mechanisms on the video cameras when he set them up.
[4] Although it is clear that this issue was not preserved for our review, we will discuss this issue because our resolution of Straughn's "insufficient-nexus" claim requires an analysis of his claim that there was a false statement in the warrant.
[5] The Alabama Supreme Court did not address whether the good-faith exception applied in Ex parte Perry. However, nothing in that case appears to limit or preclude the application of the good-faith exception in this case. Therefore, based on the claims raised and the facts presented in this case, we conclude that our holdings in this case and the Supreme Court's holding in Ex parte Perry can, and do, coexist.
[6] Here, because the videotape did not contain a recorded statement by Straughn, this requirement is not applicable.